NOTICE

Decision filed 10/21/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210263

NO. 5-21-0263

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| RICHARD ALLEN, as Personal Representative and Executor of the Estate of Barbara L. Sisson, Deceased, | ) ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-L-1278 |
| MISSOURI BAPTIST MEDICAL CENTER, | ) ) | Honorable Sarah D. Smith, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justice Welch concurred in the judgment and opinion.
Justice Cates specially concurred, with opinion.

**OPINION**

¶ 1    The defendant, Missouri Baptist Medical Center (Missouri Baptist), appeals, pursuant to Illinois Supreme Court Rule 306(a)(3) (eff. Oct. 1, 2020), the August 6, 2021, order of the circuit court of Madison County, which denied its motion to dismiss based on a lack of personal jurisdiction. For the following reasons, we reverse.

¶ 2                                    I. BACKGROUND

¶ 3    On September 4, 2020, the plaintiff, Richard Allen, as personal representative and executor of the estate of Barbara L. Sisson, deceased, filed a complaint alleging medical negligence and wrongful death against numerous physicians, health care groups, and hospitals, including the

1

appellant here, Missouri Baptist, in Madison County, Illinois.[1] On October 29, 2020, Missouri Baptist of St. Louis, Missouri, filed its motion to dismiss for lack of personal jurisdiction. On August 6, 2021, the circuit court denied the motion to dismiss, finding "sufficient minimum contacts occurred with the State of Illinois that makes specific jurisdiction over this matter appropriate." This timely appeal then followed. The facts necessary to our disposition of this matter are taken from the various filings of the parties and are as follows.

¶ 4       At all times relevant to this lawsuit, the decedent and her husband were residents of Illinois. The plaintiff alleges in his complaint the following general facts. Another defendant, Richard H. Wikiera, D.O. (Dr. Wikiera), an Illinois defendant with no association or affiliation with Missouri Baptist, performed on Barbara Sisson (Barbara) what is commonly referred to as gallbladder surgery on September 4, 2018, in Madison County, Illinois, at Anderson Hospital. The following morning, on September 5, Barbara developed a subsequent issue or complication which required additional care. Dr. Wikiera "contacted" Dr. Aliperti, "a physician who specializes in Gastroenterology and Internal Medicine, with privileges at the Missouri Baptist facility," and arranged a transfer of Barbara for further care at Missouri Baptist. Barbara was then transferred to Missouri Baptist, where she underwent further surgery and care. Unfortunately, Barbara's condition further declined, and she died on September 26, 2018. Barbara did not leave the Missouri Baptist facility from her September 5 transfer through her death on September 26.

---

[1]We note that on September 4, 2020, the plaintiff, along with his son, Donald Sisson, as the surviving son of Barbara Sisson, deceased, also filed a medical negligence action stemming from these events in the State of Missouri. In that action, only Dr. Aliperti, Midwest Therapeutic Endoscopy Consultants, and Missouri Baptist were named as defendants. That action was later dismissed so the plaintiff could pursue an action in the State of Illinois. Because neither the filing of that action nor its dismissal has any bearing on the outcome of this appeal, we decline to discuss it further and only reference the Illinois lawsuit relevant to this appeal.

¶ 5    Relevant to the issue on appeal, the plaintiff alleged in his complaint that "[Missouri Baptist] purposely directs its activities to Illinois facilities and patients, and it agreed to a request by the Illinois defendants to accept [Barbara] as a patient." He further alleged, "[a]t all times relevant, [Missouri Baptist], a corporation, was engaged in the business of providing medical care and accepting referrals of patients in Madison County, Illinois by and through its officers, agents, employees and representatives."

¶ 6    Following the plaintiff's filing of the complaint, Missouri Baptist, on October 29, 2020, entered a special and limited appearance for the limited and sole purpose of challenging the circuit court's personal jurisdiction over it. At the same time, Missouri Baptist also filed its motion to dismiss for lack of personal jurisdiction.

¶ 7    In its motion to dismiss, Missouri Baptist argued that the plaintiff failed to meet its burden of demonstrating that Missouri Baptist had sufficient contacts with Illinois to be subject to personal jurisdiction in an Illinois court. Missouri Baptist specifically stated that the plaintiff failed to allege that it provided care or treatment to the decedent within Illinois or that it committed a tortious act against the decedent within Illinois. Additionally, Missouri Baptist attached an affidavit from its manager for patient safety and risk management, Maggie Lange, which attested that (1) Missouri Baptist is a "nonprofit corporation registered with and licensed by the State of Missouri," "maintains its principal place of business in St. Louis County, State of Missouri," and "does not maintain any business in the State of Illinois," (2) the decedent was treated at Missouri Baptist from September 5, 2018, to September 26, 2018, (3) the decedent's treatment "was provided exclusively in the State of Missouri," and (4) none of Missouri Baptist's employees provided any health care services to the decedent in the State of Illinois.

3

¶ 8    Missouri Baptist's motion to dismiss argued that the provisions of sections 2-209(a) and (b) of the Code of Civil Procedure (Code) (735 ILCS 5/2-209(a), (b) (West 2020)) are not present in this matter. Thus, Missouri Baptist argued that only the due process considerations set forth in section 2-209(c) of the Code (*id.* § 2-209(c)) and the determination of whether general or specific personal jurisdiction exists were before the circuit court. Missouri Baptist asserted that specific personal jurisdiction did not exist because the alleged negligent conduct of Missouri Baptist against Barbara did not arise from any conduct or actions taken by it within Illinois. It further argued that because it is not incorporated in Illinois, does not have its principal place of business in Illinois, and does not have a permanent or systematic relationship with Illinois such that it could be considered "at home" in Illinois, general jurisdiction also did not exist.

¶ 9    The plaintiff, in his response, contended that the allegations within the complaint—alleging that Missouri Baptist knowingly accepted an Illinois resident as a patient from an Illinois physician, purposefully directed its activities towards Illinois facilities to accept their Illinois patients, and routinely accepted Illinois patients to its facility—were sufficient to confer specific personal jurisdiction.

¶ 10    On August 6, 2021, the circuit court entered an order denying Missouri Baptist's motion to dismiss. In its order, the circuit court found that Missouri Baptist was "a non-resident defendant, and therefore Illinois law requires that the defendant have certain minimum contacts with the State of Illinois in order for a court to have jurisdiction." The court then noted that the plaintiff had alleged "various affirmative acts on behalf of [Missouri Baptist], many of which involve the transfer and referral of the patient" and that "[Barbara] would not have been a patient at [Missouri Baptist] but for defendant's granting the request of an Illinois medical provider and [Missouri Baptist's] affirmative acceptance of her transfer." Finally, the circuit court held that "based on the

4

continued and routine transfer and acceptance of patients from Illinois by [Missouri Baptist] retention of personal jurisdiction over this case would not defy notions of fair play and justice"; therefore, the circuit court found that "sufficient minimum contacts occurred with the State of Illinois that makes specific jurisdiction over this matter appropriate."

¶ 11    A timely petition for leave to appeal followed from Missouri Baptist, and on March 2, 2022, this court granted leave to appeal under Rule 306(a)(3).

¶ 12                                     II. ANALYSIS

¶ 13    The sole question presented before this court is whether Missouri Baptist had sufficient minimum contacts with the State of Illinois for an Illinois court to exercise personal jurisdiction over it. We begin our analysis with a brief discussion of the relevant Illinois law applicable to this matter as previously outlined by this court in *Unterreiner v. Pernikoff*, 2011 IL App (5th) 110006, ¶ 5:

> "Before an Illinois court may exercise jurisdiction over a nonresident defendant, that court must ensure its exercise of jurisdiction 'comports with "traditional notions of fair play and substantial justice." ' *Culligan International Co. v. Wallace, Ross, & Sims*, 273 Ill. App. 3d 230, 231 (1995) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To so ensure, the court must consider three criteria:
>
> > '(1) whether the nonresident defendant had "minimum contacts" with the forum State such that it had "fair warning" that it may be required to defend there; (2) whether the action arose out of or relates to the defendant's contacts with the forum; and (3) whether it is reasonable to require the defendant to litigate in the forum State.' *Culligan*, 273 Ill. App. 3d at 231 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-78 (1985)).

5

'The determination as to what constitutes sufficient minimum contacts depends upon the facts of each case.' *Ballard v. Fred E. Rawlins, M.D., Inc.*, 101 Ill. App. 3d 601, 603 (1981). However, for sufficient minimum contacts to exist, '[t]he defendant must have voluntarily invoked the protections and benefits of the laws of the state' in question. *Muffo v. Forsyth*, 37 Ill. App. 3d 6, 9 (1976). A plaintiff may not 'lure' a nonresident defendant into a jurisdiction, and the mere 'unilateral action of the plaintiff in seeking and obtaining the service of the defendant cannot serve to satisfy the jurisdictional requirement' of minimum contacts. *Muffo*, 37 Ill. App. 3d at 9. When a defendant contests the existence of personal jurisdiction, the plaintiff bears the burden of proving its presence. *Ballard*, 101 Ill. App. 3d at 604. If the trial court has based its decision about personal jurisdiction solely on documentary evidence, as the court did here, our review of that decision is *de novo*. *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 383 (2005)."

¶ 14 The issue set before this court is a narrow one. At no time during this litigation has the plaintiff contended that the circuit court had general personal jurisdiction over Missouri Baptist in this matter. The plaintiff, in his response to Missouri Baptist's motion to dismiss, only argued that specific personal jurisdiction existed. The circuit court, in its August 6, 2021, order, found "sufficient minimum contacts occurred with the State of Illinois that makes specific jurisdiction over this matter appropriate." The circuit court's order did not address whether general personal jurisdiction was present. On appeal, the plaintiff asserts that because "[t]he Circuit Court did not find that Illinois has general jurisdiction over Missouri Baptist" and his "response below focused on specific jurisdiction," "there is no need for this Court's involvement on [the general jurisdiction] issue." In light of the foregoing, we find that the issue of general personal jurisdiction is not properly before us and—as the issue has not been raised by the plaintiff at any stage of this

6

litigation, including this appeal—it is forfeited for purposes of this appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (argument must contain the contentions of the appellant, the reasons therefor, and the citation of authorities; points not argued in an opening brief are forfeited). Thus, we turn our attention to whether the circuit court's finding of specific jurisdiction over Missouri Baptist was proper.

¶ 15 First, both parties agree that the Illinois long arm statute is applicable to determining jurisdiction in this matter, and specifically only subsection (c), which is commonly referred to as the "catch-all provision." 735 ILCS 5/2-209(c) (West 2020). The " 'catch-all provision,' broadly provides that a court 'may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.' " *Russell v. SNFA*, 2013 IL 113909, ¶ 30 (quoting 735 ILCS 5/2-209(c) (West 2002)). "Thus, when, as here, a plaintiff argues that personal jurisdiction is proper under subsection (c) of the Illinois long-arm statute, the sole issue before the court is whether the nonresident defendant's connection or contact with Illinois is sufficient to satisfy federal and Illinois due process." *Id.* Accordingly, " '[s]pecific jurisdiction requires a showing that the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relates to the defendant's contacts with the forum state.' " *Linder v. A.W. Chesterton Co.*, 2020 IL App (5th) 200101, ¶ 11 (quoting *Russell*, 2013 IL 113909, ¶ 40, and citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

¶ 16 "It is settled that the plaintiff has the burden to establish a *prima facie* basis to exercise personal jurisdiction over a nonresident defendant." *Russell*, 2013 IL 113909, ¶ 28. In the case at bar, the plaintiff's basis for the existence of specific jurisdiction is that Missouri Baptist "purposely directed its activity" towards Illinois when "it agreed to a request by the Illinois defendants to accept [Barbara] as a patient" and through its "accepting referrals of patients in Madison County,

7

Illinois." The plaintiff did not allege any other contacts with Illinois outside of its acceptance of Illinois residents to its facility. There are no allegations that Missouri Baptist advertised or solicited Illinois residents, that it had any agreements with Illinois health care providers or facilities for transfers of patients, or that it facilitated the transfer of the patient from Illinois to Missouri. All the parties agree that Missouri Baptist did not provide any medical care to Barbara while she was in Illinois; instead, all of the medical treatment she was provided by Missouri Baptist occurred in Missouri following her transfer. Following Missouri Baptist's challenging of personal jurisdiction, the plaintiff did not offer any supplemental evidence to support his claims or highlight any additional contacts with Illinois. No affidavits or other evidence relating to the issue of specific jurisdiction was set forth. Further, the plaintiff failed to request an opportunity to conduct limited discovery on the jurisdictional issue and no discovery on the issue was completed by the parties. The plaintiff instead chose to stand on the allegations contained in his complaint, both at the circuit court level and here on appeal, contending that they are sufficient to establish specific personal jurisdiction over Missouri Baptist. Thus, while there may be other contacts that Missouri Baptist has with Illinois, we must consider only that which the plaintiff has alleged in his pleadings. Based upon the case law as articulated below, we find that the allegation that Missouri Baptist accepted an Illinois patient and that it "routinely" accepts patients from Madison County is not sufficient for the plaintiff to meet his *prima facie* case supporting specific personal jurisdiction.

¶ 17    The United States Supreme Court in *Burger King Corp.*, 471 U.S. 462, noted that "a potential nonresident defendant should be able to 'reasonably anticipate' being drawn into litigation in the foreign forum." *Russell*, 2013 IL 113909, ¶ 42. In *Burger King Corp.*, the Court went on to explain:

8

" 'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King Corp.*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

"The Court further explained that requiring a showing of 'purposeful availment' within the forum state protects a nonresident defendant from being haled into a jurisdiction based on random or attenuated contacts or the unilateral activity of a third party." *Russell*, 2013 IL 113909, ¶ 42 (citing *Burger King Corp.*, 471 U.S. at 475). Specific jurisdiction can be exercised with due process only where the defendant's activities in the state " 'give rise to the liabilities sued on.' " *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

¶ 18     We are therefore tasked with deciding whether Missouri Baptist's "routine" acceptance of patients from Illinois, and its subsequent acceptance of the transfer of Barbara, was sufficient to create minimum contacts with Illinois to give rise to specific jurisdiction. There are numerous cases within Illinois that have addressed jurisdictional issues as it relates to Illinois residents and out-of-state health care providers. Unfortunately, none of these cases is specifically on point with the facts set before us; however, we do find them to be instructive when taken together for the purposes of this decision.

        "In *Muffo v. Forsyth*, 37 Ill. App. 3d 6, 9 (1976), this court held that when an Illinois resident seeks out treatment from a nonresident provider, the mere fact that the nonresident

9

provider is aware that the Illinois resident 'would likely fill' the provider's prescription in Illinois is not sufficient to invest personal jurisdiction over the nonresident. That is because the Illinois resident 'was the motivating force for the relationship' and, having sought treatment in Missouri, could reasonably be required 'to return to Missouri to prosecute any actions arising out of that treatment.' *Muffo*, 37 Ill. App. 3d at 10. Thus, for sufficient minimum contacts to exist, '[t]he defendant must have voluntarily invoked the protections and benefits of the laws of the state' in question. *Muffo*, 37 Ill. App. 3d at 9. A plaintiff may not 'lure' a nonresident defendant into a jurisdiction, and the mere 'unilateral action of the plaintiff in seeking and obtaining the service of the defendant cannot serve to satisfy the jurisdictional requirement' of minimum contacts. *Muffo*, 37 Ill. App. 3d at 9.

Likewise, in *Ballard v. Fred E. Rawlins, M.D., Inc.*, 101 Ill. App. 3d 601, 605 (1981), we held that even when a nonresident provider calls prescriptions in to an Illinois pharmacy, the mere fact that the nonresident provider asked the Illinois resident for the name of a pharmacy close to where the Illinois resident lived, 'such [pharmacy] being in Illinois, is an insufficient basis for subjecting the [nonresident provider] to the jurisdiction of Illinois.' Building upon our reasoning in *Muffo* and *Ballard*, the appellate court held in *Veeninga v. Alt*, 111 Ill. App. 3d 775, 779 (1982), that the 'unilateral activity' of an Illinois resident 'in seeking and obtaining medical services outside of Illinois' led to the alleged damages to that resident and that, accordingly, the nonresident provider 'was not amenable to the jurisdiction of Illinois courts.' That was true in *Veeninga* even though the Illinois resident's prescriptions had been filled in Illinois, he had injected himself with the prescribed drugs in Illinois, and the allegation in his complaint was that the prescription

10

drugs were unnecessary and had been negligently prescribed to him. 111 Ill. App. 3d at 776." *Unterreiner*, 2011 IL App (5th) 110006, ¶¶ 7-8.

¶ 19    The plaintiff argues that many of the cases, such as those discussed above, cannot be relied upon because they were decided prior to the amendment of section 2-209 that extended the long-arm jurisdiction to the full extent allowed by due process of law. However, numerous cases following those decisions have also relied upon the analysis of those cases and reiterate the analysis derived from those decisions. Thus, while not necessarily binding upon this court, they remain instructive and the logic behind their analysis remains intact.

¶ 20    In *Unterreiner*, 2011 IL App (5th) 110006, the plaintiff, an Illinois resident, traveled to Missouri for her medical appointments with the defendant health care providers. After some initial blood work, the Missouri health care provider phoned the plaintiff at her home in Illinois, instructed her to take some medication, and asked her to return to their Missouri offices for follow-up. *Id.* ¶ 3. This court found personal jurisdiction could not rest on a phone conversation. *Id.* ¶ 9. The defendants operated their medical offices exclusively in Missouri, were licensed only in Missouri, never advertised for clients in Illinois, and never owned or leased any real or personal property in Illinois. *Id.* The plaintiff unilaterally sought out the defendants and traveled to Missouri to receive treatment from them. *Id.* Thus, we found that the fact that the defendants provided advice to her over a phone call while she was in Illinois could not equate to the defendants having "voluntarily invoked the protections and benefits of the laws of the State" of Illinois. (Internal quotation marks omitted.) *Id.*

¶ 21    Also, in *Sabados v. Planned Parenthood of Greater Indiana*, 378 Ill. App. 3d 243, 245 (2007), an Illinois patient brought a medical negligence action against Planned Parenthood of Greater Indiana (PPI), which prescribed birth control pills for her, alleging injuries from a blood

11

clot sustained after she returned to Illinois. PPI was located in Indiana and did not maintain an office in Illinois. *Id.* at 251. It also conducted treatment and business exclusively in Indiana. *Id.* The appellate court found that minimum contacts were lacking to have jurisdiction over PPI in Illinois because the only contacts with Illinois were telephone book advertisements, which the court found amounted "to mere solicitation." *Id.*

¶ 22 The list of cases above is by no means exhaustive, but taken together, they outline that where a patient initiates contact with an out-of-state facility, which does not have offices or conduct services within Illinois, personal jurisdiction generally will not exist without further contacts or activities by the out-of-state defendant with Illinois. See also *Green v. United States*, No. 14-CV-119-NJR-DGW, 2016 WL 6248281 (S.D. Ill. Oct. 26, 2016) (no jurisdiction over Missouri health care providers who had telephone contact with a correctional facility regarding plaintiff inmate's office note); *Clemens v. Greenberg*, 2022 IL App (1st) 201129 (brief phone call between Wisconsin doctor who had treated patient for infection in Wisconsin and emergency room (ER) physician in Illinois, in which physician informed the doctor of patient's deep vein thrombosis and how he would treat patient, did not create minimum contacts with Illinois sufficient to satisfy due process and subject doctor and hospital to specific personal jurisdiction under Illinois's long-arm statute, in patient's medical malpractice action; where call was initiated by patient's mother and ER physician, doctor's participation was extremely limited, and doctor did not provide any input into treatment plan).

¶ 23 The plaintiff and the circuit court distinguished the cases cited above with the present case by arguing/finding that Barbara did not "unilaterally" select the out-of-state health care provider. It is the plaintiff's and the circuit court's contention that Missouri Baptist's *acceptance* of the transfer of an out-of-state patient destroyed the unilateral nature of the contact between the parties,

12

rendering the analysis of these cases inapplicable. Plaintiff argues that Barbara "did not travel to Missouri; she was transferred there, after Missouri Baptist chose to accept the transfer. She did not show up on its doorstep." We disagree. This court fails to find a significant difference between a patient "traveling" on her own and the "transfer" of a patient orchestrated by her health care provider. In both cases, the out-of-state health care provider has not reached into Illinois, but the patient, whether by her own travel or a phone call from her physician acting on her behalf, has reached out into the out-of-state forum for treatment. There is no allegation that Missouri Baptist initiated the contact between the parties; in fact, it is clear from the plaintiff's pleadings that Barbara, through her physician, initiated the contact. Further, Missouri Baptist did not come to Illinois to treat Barbara. They required that she come to Missouri to be treated. The mere acceptance of the transfer of an out-of-state patient, alone, does not give rise to specific jurisdiction over the health care provider in the home state of that patient. It is a leap to find that a patient showing up on the doorstep of a hospital, on her own accord, and the hospital accepting her as a patient constitutes "unilateral" activity, but that a patient's physician calling a hospital and getting the acceptance prior to the travel to the facility does not. In both cases, the out-of-state patient is initiating the contact and, in both cases, the out-of-state defendant is accepting the defendant for treatment at its location out of state. It is important that we reiterate that we are only considering the allegations as contained within the plaintiff's complaint in this matter; thus, we are only considering whether the acceptance of the transfer of a patient *alone*, as alleged in this case, is sufficient. We are not holding that the acceptance of a patient cannot be considered alongside other contacts that could then be sufficient to give grounds for specific jurisdiction.

¶ 24    Additionally, we must keep in mind that not only must there be contact with Illinois, but specific jurisdiction can be exercised with due process only where the defendant's activities in the

13

state " 'give rise to the liabilities sued on.' " *Daimler AG*, 571 U.S. at 138 (quoting *International Shoe Co.*, 326 U.S. at 317). Here, that would mean we would need to find that Missouri Baptist's act of accepting the transfer of Barbara "gave rise" to her injuries. The plaintiff attempts to put forth a "but-for" theory of causation, arguing that but for Missouri Baptist's acceptance and her subsequent transfer to their facility, the harm would have never occurred. However, we find this is insufficient to give Illinois specific jurisdiction over Missouri Baptist.

¶ 25    "Although the United States Supreme Court has not clarified what is meant by 'arising out of' or 'related to' in the context of a jurisdiction question [citation], several courts have determined that the applicable standard is lenient or flexible." *Russell*, 2013 IL 113909, ¶ 83 (citing *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 913 (8th Cir. 2012)). Despite this lenient standard, we decline to go so far as to say that the acceptance of a patient by a hospital caused or led to the death of a patient. Generally, broad "but-for" arguments are insufficient. "Because ' "but for" events can be very remote, *** due process demands something like a "proximate cause" nexus.' " *Harlow v. Children's Hospital*, 432 F.3d 50, 61 (1st Cir. 2005) (quoting *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik*, 295 F.3d 59, 65 (1st Cir. 2002)). "A 'but for' requirement *** has in itself no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 715 (1st Cir. 1996). Therefore, "although proximate causation is not a *per se* requirement of specific jurisdiction, its presence or absence is still important." *Harlow*, 432 F.3d at 61.

¶ 26    Here, the location of the alleged tortious conduct, medical malpractice, occurred in Missouri, not Illinois. There are no allegations that an issue occurred in the transfer or that the acceptance resulted in delayed treatment. The plaintiff has put forth no evidence that Missouri Baptist purposefully induced Barbara to leave Illinois to come to Missouri or that Missouri Baptist

14

induced Barbara's Illinois physician to refer her to Missouri Baptist. Therefore, the subsequent alleged medical negligence of a health care provider, without more, does not "arise out of" the acceptance of the transfer of patient.

¶ 27    Furthermore, the plaintiff, and the circuit court decision, imply that Missouri Baptist's alleged "routine" acceptance of patients from Madison County, Illinois, is a basis for specific jurisdiction. This is not entirely correct.

> "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' [Citation.] When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. ___, ___, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Here, it appears that the plaintiff and the circuit court conflate to an extent the often-blurry line between specific and general jurisdiction. As discussed above, the acceptance of a patient alone is not grounds for specific jurisdiction. However, the number of patients a health care facility sees could be evidence of business activity within a state, such that a plaintiff could argue that the state is "at home" for purposes of general jurisdiction, especially when paired with other activities such as marketing, sales, advertising, etc. However, in our examination of specific jurisdiction, the acceptance of other individuals unrelated to the lawsuit is not relevant unless it demonstrates activity that would be directed at Illinois residents or the injured party or that the defendant is availing itself of Illinois laws or protections. This delineation is also evidenced in some of the aforementioned cases. Here, the plaintiff put forth only the allegations contained in the complaint,

15

and there was no evidence presented that Missouri Baptist directed advertising, outreach efforts, or anything of this nature into Illinois to seek out or acquire Illinois residents as patients. Like the cases cited above, the relationship between Missouri Baptist and Barbara began with an unsolicited and unilateral phone call from Barbara's Illinois physician to Missouri Baptist. While it is true that Missouri Baptist accepted an Illinois resident as a patient, it did so at its Missouri facility. This is simply not a case of Missouri Baptist doing anything that might be construed as availing itself of the benefits or protections of Illinois laws.

¶ 28    Furthermore, we briefly turn to the case *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381 (2005), which provides an example of when a defendant has availed itself of Illinois laws sufficient to support personal jurisdiction. In *Kostal*, the out-of-state defendant was a national diagnostic lab company based in Michigan, whose physicians provided diagnostic services in Michigan through the mail to Illinois patients. The *Kostal* court noted that the services "[were fundamentally interstate in nature from the inception of the relationship." (Internal quotation marks omitted.) *Id.* at 397. The court also noted that special jurisdictional rules exist with respect to physicians "to ensure that jurisdiction is asserted only when that physician has purposefully availed himself of the privileges of conducting activities in the patient's state." *Id.* at 390. Generally, "the tortious rendition of medical services outside the forum state is not a portable tort that would subject an out-of-state doctor to jurisdiction in the forum." *Id.* at 392 (citing *Wright v. Yackley*, 459 F.2d 287 (9th Cir. 1972)). Thus, because the plaintiff did not travel out of the State of Illinois to receive medical care and because defendants purposefully directed activities to Illinois through their mail-based diagnostic services, the exercise of personal jurisdiction over the defendants comported with due process requirements. *Id.* at 397-98.

¶ 29   The present matter stands in stark contrast to *Kostal*. Here, Barbara physically traveled to Missouri for medical treatment. No treatment was rendered by Missouri Baptist in Illinois. There are no allegations that Missouri Baptist solicited, advertised to, or targeted the plaintiff or any other Illinois resident. There are no allegations that Missouri Baptist had any ongoing relationship with the Illinois physician who referred Barbara to them. The only contact with Illinois is Missouri Baptist's acceptance of the transfer of an Illinois resident to its facility. Ultimately, the mere fact that the reputation and expertise of an institution lead to referrals from out of state cannot be enough to establish specific jurisdiction.

¶ 30   We acknowledge that with the advancement in technology, especially the ability to video conference, the way health care is delivered to patients is rapidly changing. Physician-patient interactions and medical treatment no longer always require in-person meetings like it previously did. Further, health care providers are consolidating and becoming larger and more regional in nature. As a result, we must reiterate that each case where the issue of personal jurisdiction arises, especially in the context of medical services, must be decided upon its own facts.

¶ 31   Therefore, here, where we must consider only the allegations contained in the plaintiff's complaint as alleged and where the plaintiff bears the burden of showing a *prima facie* case of specific personal jurisdiction, we find that the plaintiff has failed to meet his burden because Missouri Baptist's acceptance of an Illinois resident, alone, does not create sufficient minimum contacts with Illinois to create personal jurisdiction in Illinois courts.

¶ 32                                III. CONCLUSION

¶ 33   For the foregoing reasons, we reverse the circuit court's August 6, 2021, order denying the defendant's motion to dismiss.

¶ 34   Reversed.

17

¶ 35    JUSTICE CATES, specially concurring:

¶ 36    I agree with the majority's determination that the trial court erred when it denied Missouri

Baptist's motion to dismiss for lack of specific personal jurisdiction. I write separately because I

do not agree fully with the majority's jurisdictional analysis and discussion of case law. The only

issue on appeal is whether the trial court erred in finding that it had specific personal jurisdiction

over Missouri Baptist in this case. After reviewing the record, sparse as it is, I find that the plaintiff

did not meet his burden to establish a *prima facie* basis for specific personal jurisdiction over

Missouri Baptist under the particular facts presented herein. Accordingly, the trial court's finding

of specific jurisdiction cannot be sustained.

¶ 37    In this case, the plaintiff's decedent was transferred from a hospital in Madison County,

Illinois, to Missouri Baptist in St. Louis, Missouri, where she later died. The plaintiff brought a

medical negligence action against Missouri Baptist and several other defendants in the circuit court

of Madison County. Missouri Baptist moved to dismiss the claims against it, arguing the Illinois

circuit court did not have general or specific jurisdiction over it. The plaintiff filed a response in

opposition to Missouri Baptist's motion. Therein, the plaintiff addressed only specific

jurisdiction.[2] The trial court found there were "sufficient minimum contacts" with the State of

Illinois to "make specific jurisdiction over this matter appropriate" and denied Missouri Baptist's

motion to dismiss on that basis.[3] Missouri Baptist appealed.

¶ 38    Under federal due process standards, a court may exercise specific jurisdiction over a

nonresident defendant who has not consented to suit if the defendant has "purposefully directed"

---

[2]In the appellee's brief, the plaintiff readily acknowledged that his arguments in the trial court focused solely on specific jurisdiction, and as such, there was "no need for this Court's involvement" on the issue of general jurisdiction.

[3]Missouri Baptist also argued that it was not subject to general personal jurisdiction in Illinois, but the trial court did not reach that issue. Accordingly, that issue is reserved for another day.

18

his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities. (Internal quotation marks omitted.) *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In *Burger King Corp.*, the United States Supreme Court explained the rationale underlying this principle of due process:

"A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. [Citations.] Moreover, where individuals 'purposefully derive benefit' from their interstate activities [citation], it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity. [Citation.]" *Burger King Corp.*, 471 U.S. at 473-74.

¶ 39 The Supreme Court noted that, notwithstanding the aforementioned considerations, the "constitutional touchstone" is whether the defendant purposefully established " 'minimum contacts' " with the forum state. *Burger King Corp.*, 471 U.S. at 474 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). While the application of the rule will vary with the quality and nature of the defendant's activities, it is essential that " 'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King Corp.*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This "purposeful availment" requirement

protects a nonresident defendant from being brought into a jurisdiction based on random or attenuated contacts or the unilateral activity of another person. *Burger King Corp.*, 471 U.S. at 475. Where, however, a nonresident defendant has "deliberately *** engaged in significant activities" within a forum or "created continuing obligations" between himself and residents of the forum, he has availed himself of the privileges of conducting business in that forum and of the benefits and protections of the forum's laws. Under such circumstances, it is "presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." (Internal quotation marks omitted.) *Burger King Corp.*, 471 U.S. at 475-76. Jurisdiction may not be avoided simply because the defendant did not physically enter the forum. *Burger King Corp.*, 471 U.S. at 476.

¶ 40    In keeping with these principles, an Illinois court may exercise specific personal jurisdiction over a nonresident defendant if the defendant has purposefully directed its activities at the forum and the action arises out of or relates to those activities. *Russell v. SNFA*, 2013 IL 113909, ¶ 40 (citing *Burger King Corp.*, 471 U.S. at 472). Specific personal jurisdiction is case specific. *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 14. The plaintiff has the burden to establish a *prima facie* basis upon which an Illinois court may exercise personal jurisdiction over a nonresident defendant. *Russell*, 2013 IL 113909, ¶ 28.

¶ 41    Here, the plaintiff alleged that Missouri Baptist "purposely direct[ed] its activities to Illinois facilities and patients, and it agreed to a request by the Illinois defendants to accept [plaintiff's decedent] as a patient." The plaintiff further alleged that Missouri Baptist "was engaged in the business of providing medical care and accepting referrals of patients in Madison County, Illinois, by and through its officers, agents, employees and representatives." When presented with Missouri Baptist's challenge to personal jurisdiction, the plaintiff did not offer supporting

affidavits or other evidence to establish specific jurisdiction, nor did he request an opportunity to conduct limited discovery on that issue. Instead, the plaintiff argued that the unrebutted allegations in his complaint were sufficient to establish specific personal jurisdiction over Missouri Baptist. Contrary to the plaintiff's contention, the complaint does not contain specific factual allegations establishing the nature and quality of Missouri Baptist's relationship with the plaintiff's decedent and Illinois or the existence, nature, and quality of the relationships among Missouri Baptist, Dr. Aliperti, and Dr. Wikiera. While there seems no dispute that Dr. Wikiera, an Illinois physician, contacted Dr. Aliperti, "a physician who specializes in Gastroenterology and Internal Medicine," the plaintiff did not present any factual allegations, supporting affidavits, or other documentation describing the specific conversation between these two physicians pertaining to the plaintiff's decedent or the details surrounding the referral and transfer of the decedent from an Illinois medical facility to Missouri Baptist. Significant questions regarding these matters remain unanswered. For example, was the transfer of the patient performed at the direction of Dr. Aliperti, and if so, what instructions did Dr. Aliperti give for the transfer? Were Dr. Aliperti and his employer, Midwest Therapeutic Endoscopy Consultants, LLC, agents of Missouri Baptist?

¶ 42 Additionally, Missouri Baptist presented an affidavit by Maggie Lange in support of its jurisdictional arguments. In the affidavit, Lange stated that Missouri Baptist did not maintain any business in Illinois. The plaintiff did not attempt to counter Lange's assertion. Some limited discovery or investigation of these matters might have shed light on the quality, nature, and extent of Missouri Baptist's contacts with Illinois and its residents.[4]

---

[4]Here, for example, a click of the mouse could have produced the corporate standing of Midwest Therapeutic Endoscopy Consultants, LLC, revealing that it was an LLC registered to do business in Illinois, and that Dr. Aliperti was the named manager. See *Corporation/LLC Search/Certificate of Good Standing*, Ill. Sec'y of State, https://apps.ilsos.gov/corporatellc/corporatellccontroller (last visited Oct. 18, 2022) [https://perma.cc/49KN-ZVMJ]. Likewise, a view of the websites of Missouri Baptist and BJC HealthCare indicates that Missouri Baptist is part of the BJC HealthCare (BJC) system; that BJC does business through

¶ 43　To recap, the plaintiff did not present specific allegations or any supporting affidavits or documentation regarding the details surrounding the referral and transfer of the decedent from a health care facility in Illinois to a health care facility in Missouri. Additionally, the extent and quality of Missouri Baptist's contacts with Illinois went undeveloped in this case. The plaintiff's bare, conclusory allegations are not sufficient to make a *prima facie* showing that Missouri Baptist's contacts with Illinois satisfied due process for purposes of specific personal jurisdiction in this case. For these reasons, I conclude that the trial court erred in finding that it had specific personal jurisdiction over Missouri Baptist and that the court's decision must be reversed.

¶ 44　In the majority opinion, my colleagues state that the jurisdictional issue is narrow, and that this court is "tasked with deciding whether Missouri Baptist's 'routine' acceptance of patients from Illinois, and its subsequent acceptance of the transfer of [the decedent], was sufficient to create minimum contacts with Illinois to give rise to specific jurisdiction." *Supra* ¶ 18. The majority then considers a line of Illinois cases in which Illinois residents, acting unilaterally, made conscious decisions to travel outside of Illinois for medical treatment and thereafter were not permitted to prosecute actions against the nonresident medical providers in Illinois because there was no showing that the nonresident providers purposefully availed themselves of the privilege of conducting business in Illinois. *Unterreiner v. Pernikoff*, 2011 IL App (5th) 110006, ¶ 9; *Veeninga*

its broad network of physicians and hospitals in Illinois, including Madison County; and that Dr. Aliperti is a part of the BJC network of physicians. See, *e.g.*, *Missouri Baptist Medical Center*, BJC HealthCare, https://www.bjc.org/about-us/bjc-locations/missouri-baptist-medical-center (last visited Oct. 18, 2022) [https://perma.cc/RK57-U8X3]; *Locations*, BJC HealthCare, https://www.bjc.org/about-us/locations (last visited Oct. 18, 2022) [https://perma.cc/L4SC-X9YR]; *Giuseppe Aliperti, MD*, BJC HealthCare, https:// doctors.bjc.org/wlp2/doctors/info/akt003z6/giuseppe-aliperti-md (last visited Oct. 18, 2022) [https:// perma.cc/86RZ-R6UK].

　　　The plaintiff could have requested that the trial court take judicial notice of the websites or domain locations of the individual and corporate defendants. See generally *Innovative Garage Door Co. v. High Ranking Domains, LLC*, 2012 IL App (2d) 120117, ¶ 4 n.1; *People v. Clark*, 406 Ill. App. 3d 622, 632 (2010); Ill. R. Evid. 201(b) (eff. Jan. 1, 2011).

*v. Alt*, 111 Ill. App. 3d 775, 779 (1982); *Ballard v. Fred E. Rawlins, M.D., Inc.*, 101 Ill. App. 3d 601, 605 (1981); *Muffo v. Forsyth*, 37 Ill. App. 3d 6, 9 (1976). The majority acknowledges that these cases are not specifically on point on the facts, but nevertheless finds them instructive. *Supra* ¶ 18. I do not share this view.

¶ 45    Specific jurisdiction depends on the particular and unique facts in each case. None of the cases cited above are analogous to the case before us.[5] Each of these cases was decided on its own particular facts, and, unlike the present case, the jurisdictional facts were better developed in those cases. As noted above, there is scant information in the record regarding the activities of Missouri Baptist and its agents with respect to the "routine acceptance" of transfer patients and the subsequent acceptance and transfer of the decedent. Because the jurisdictional facts have not been developed in the case at bar, there are no meaningful points of comparison between this case and those cited in the majority opinion. It is like trying to compare an open box, with its contents displayed, and a closed container, sealed with conclusory allegations.

¶ 46    The majority also discusses *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381 (2005), as an example of a case in which nonresident defendants purposely directed activities at Illinois and availed themselves of Illinois law. Upon considering the quality and nature of the defendants' activities with Illinois and its residents, the *Kostal* court determined that the defendants, by the very nature of their business model and practice, operated nationwide and that,

---

[5]In *Unterreiner*, the nonresident physicians' solitary, follow-up phone call to the residence of their Illinois patient to adjust a prescription was insufficient to establish that the defendants had voluntarily invoked the protections and benefits and protections of the laws of Illinois. In *Veeninga*, *Ballard*, and *Muffo*, a nonresident physician called-in or wrote a prescription for a medication for an Illinois patient that was filled in Illinois, and that single phone call or contact was found to be an insufficient basis for exercising personal jurisdiction over the nonresident provider. It is also noteworthy that *Veeninga*, *Ballard*, and *Muffo* were decided before the legislature amended the Illinois long-arm statute in 1989, adding a "catch-all" provision that allows a court to exercise jurisdiction on "any other basis *** permitted by the Illinois Constitution and the Constitution of the United States." Ill. Rev. Stat. 1989, ch. 110, ¶ 2-209(c).

through their national operations, "affected a significant interest in Illinois—the health of one of its citizens." *Kostal*, 357 Ill. App. 3d at 398. Again, unlike the case at bar, the *Kostal* court had the benefit of a record in which the jurisdictional facts regarding personal jurisdiction were developed.

¶ 47 Later in the opinion, the majority acknowledges the lack of development of jurisdictional facts in this record, but nevertheless finds that like the aforementioned cases, "the relationship between Missouri Baptist and [the decedent] began with an unsolicited and unilateral phone call" from the decedent's physician to Missouri Baptist and that "[t]his is simply not a case of Missouri Baptist doing anything which might be construed as availing itself of the benefits or protections of Illinois laws." *Supra* ¶ 27. I do not agree that those findings can be discerned from the current record. What is known is that a seriously ill patient was transferred from an Illinois health care facility to a Missouri hospital. Beyond that, as noted above, the plaintiff did not provide any allegations or information regarding the specific circumstances surrounding the patient transfer. As to Missouri Baptist, the facts regarding personal jurisdiction, specific and general alike, have not been developed in this case.

¶ 48 Decades ago, the Supreme Court recognized that "modern transportation and communications" made it much less burdensome for a party to defend itself in a forum where it engaged in economic activities and, therefore, that it usually would not be unfair to subject that party to the burdens of litigating disputes related to its activities in that forum. (Internal quotation marks omitted.) *Burger King Corp.*, 471 U.S. at 474. The "constitutional touchstone" of due process remains whether a nonresident defendant purposefully established "minimum contacts" within a forum, but advances in technology and transportation impact the nature and quality of a defendant's activities and contacts with that forum. *Burger King Corp.*, 471 U.S. at 474. The delivery of health care services has noticeably changed in the past several years due, in part, to

24

significant advances in communications technology. Increasingly, medical consultations and virtual health care services are being offered via telemedicine and the web. Medical providers, including local physicians, are able to reach out beyond state lines to establish relationships with, and meet obligations to, their out-of-state patients. Health care corporations routinely engage in mergers and acquisitions of regional health care facilities and, with intentionality, market their services to patients regionally. Whether an out-of-state provider is subject to personal jurisdiction in Illinois must be decided based on the unique facts presented in each case and in light of the continuing advances in "transportation and communications."

¶ 49    In sum, this case presents us with a single issue of specific jurisdiction, and the resolution of the issue depends upon the minimum contacts that Missouri Baptist, an out-of-state health care corporation, has with Illinois and one of its residents. The plaintiff did not present specific factual allegations or supporting documentation regarding the quality and nature of Missouri Baptist's contacts and relationship with the decedent and the State of Illinois. Instead, the plaintiff relied on conclusory allegations in his complaint to support his claim of specific personal jurisdiction. Without sufficient support for his jurisdictional allegations, the plaintiff did not meet his burden to make a *prima facie* showing that Missouri Baptist purposely directed its activities to Illinois facilities and patients and, therefore, that its activities were not random, fortuitous, or attenuated. In light of the foregoing, the trial court's finding that it had specific jurisdiction over Missouri Baptist cannot be sustained. Therefore, I agree the trial court's decision must be reversed.

¶ 50    For the reasons stated, I specially concur.

25

*Allen v. Missouri Baptist Medical Center*, 2022 IL App (5th) 210263

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Madison County, No. 20-L-1278; the Hon. Sarah D. Smith, Judge, presiding. |
| **Attorneys for Appellant:** | Michael J. Nester, of Donovan Rose Nester, P.C., of Belleville, and Terrence J. O'Toole Jr., of Baker Sterchi Cowden & Rice LLC, of St. Louis, Missouri, for appellant. |
| **Attorneys for Appellee:** | Roy C. Dripps, Charles W. Armbruster III, and Michael T. Blotevogel, of Armbruster Dripps Blotevogel, LLC, of Maryville, for appellee. |