2022 IL App (1st) 201129

FIFTH DIVISION
July 22, 2022

No. 1-20-1129

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MICHELLE CLEMENS, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID GREENBERG, M.D.; TRI-COUNTY EMERGENCY PHYSICIANS, LTD.; ADVOCATE HEALTH AND HOSPITALS CORPORATION, d/b/a Advocate Good Shepherd Hospital; MICHAEL LANDRUM, M.D.; and BELLIN HEALTH SYSTEMS, INC. d/b/a Bellin Health Infectious Disease, | ) ) ) ) ) ) ) | No. 19 L 3362 |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Michael Landrum, M.D., and Bellin Health Systems, Inc., Defendants-Appellants). | ) ) | Honorable Christopher E. Lawler, Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Hoffman concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff, Michelle Clemens, alleged a negligence action against defendants, Michael

Landrum, M.D., and Bellin Health Systems, Inc., d/b/a Bellin Health Infectious Disease (Bellin),

among others. Landrum and Bellin are located in Wisconsin, and Landrum treated Clemens for an

infection. The circuit court denied Landrum and Bellin's motion to dismiss for lack of personal jurisdiction. On appeal, Landrum and Bellin contend that they do not have sufficient minimum contacts with Illinois to satisfy the requirements for personal jurisdiction. We agree and reverse and remand with directions.

¶ 2                                    I. BACKGROUND

¶ 3    Initially, Clemens named Landrum and Bellin respondents in discovery in a medical malpractice action that Clemens filed in March 2019 against Dr. David Greenberg, Tri-County Emergency Physicians, Ltd., and Advocate Health and Hospitals Corporation, d/b/a Advocate Good Shepherd Hospital, all three of which were alleged to be located in Illinois. Clemens stated in part that on May 9, 2017, she presented to Greenberg with calf pain. After an ultrasound revealed a deep vein thrombosis (DVT), Greenberg ordered a shot of Lovenox and started Clemens on Eliquis, which was a nonreversible anticoagulant. Clemens later developed a massive brain bleed, but her surgery had to be delayed because she was on Eliquis. Clemens later experienced severe and nonreversible neurologic symptoms.

¶ 4    Landrum and Bellin filed a motion to terminate their status as respondents in discovery and dismiss for lack of personal jurisdiction. Landrum and Bellin stated in part that Landrum provided care to Clemens exclusively in Green Bay, Wisconsin. Attached to Landrum and Bellin's motion was an affidavit from Peter G. Vandenhouten, the senior vice president and general counsel for Bellin Memorial Hospital, who averred in part that Landrum practiced in an office and at Bellin Memorial Hospital, both of which were in Green Bay. Bellin had offices and facilities exclusively in northeastern Wisconsin and the upper peninsula of Michigan. Landrum never provided any care and treatment to Clemens in Illinois, never practiced medicine in Illinois, and was not licensed to practice medicine in Illinois. Landrum did not have a significant number of Illinois patients

compared to his Wisconsin patient population. Neither Landrum nor Bellin advertised their services in Illinois or solicited any business in Illinois from Illinois residents.

¶ 5    In her response to Landrum and Bellin's motion, Clemens recalled the care she received from Landrum, citing in part to progress notes that are not in the record but were stated to be available for *in camera* review. In April 2017, Clemens was treated at Bellin Memorial Hospital for endocarditis. Clemens informed Landrum that once she was released, she would move home to Illinois and return for her remaining treatments. Landrum completed a referral to Coram CVS Specialty Infusion Services in Peoria, Illinois, so that Clemens could receive home infusion antibiotic therapy. Landrum and Bellin were paid under a Blue Cross Blue Shield of Illinois insurance policy. Before Clemens could complete Landrum's treatment, she supposedly suffered a DVT for which she was inappropriately anticoagulated, resulting in a massive brain bleed. Landrum was consulted when Clemens went to the emergency room for the DVT and may have amended Clemens's ongoing treatment accordingly. Clemens asserted that Landrum and Bellin's services were fundamentally interstate in nature from the inception of the relationship.

¶ 6    In reply, Landrum and Bellin asserted in part that they did not have any contacts with Illinois to satisfy the requirements for personal jurisdiction. The case involved the unilateral activity of Clemens, who sought medical care from a non-Illinois doctor and then returned to Illinois, where she claimed that she later received improper medical care from an unrelated Illinois hospital and Illinois doctor.

¶ 7    On August 6, 2019, the circuit court denied Landrum and Bellin's motion and ordered them to comply with discovery. The court stated that, viewed in a light most favorable to Clemens, an Illinois resident, her relationship to Landrum and Bellin was fundamentally interstate in nature. Landrum and Bellin purposefully directed certain care and treatment. The court noted that Clemens

sought to discover information about injuries that Landrum and Bellin's care and treatment may have contributed to or caused. The state had a significant interest in determining whether certain activities affect a resident's health. The court found it fair, just, and reasonable to assert specific jurisdiction and compel Landrum and Bellin to participate in discovery.

¶ 8 Landrum and Bellin filed a motion to reconsider, stating in part that none of the activities that the court relied on were alleged to be a cause of Clemens's injuries. Also, Clemens's unilateral travel to Illinois did not support a finding that Landrum availed himself of the privilege of conducting activities or the protections of Illinois law. The court denied the motion to reconsider on October 22, 2019.

¶ 9 Clemens moved to amend the complaint and convert Landrum and Bellin from respondents in discovery to defendants, which the court granted. Clemens's first amended complaint asserted a negligence claim against Landrum and Bellin, stating that "[o]n information and belief," Greenberg and Landrum "discussed the need to anticoagulate [Clemens] given the alleged DVT and her infective endocarditis." On May 9, 2017, "and continuing thereafter," Bellin and Landrum deviated from the standard of care by providing an anticoagulant, failing to admit Clemens and/or order serial ultrasounds, and failing to prescribe Lovenox or warfarin if in fact anticoagulation was needed.

¶ 10 Attached to the first amended complaint was a medical report from a certified internist and infectious disease specialist. According to the report, "the record [revealed] that Dr. Greenberg had a conversation with Dr. Landrum in the Emergency Department *** and informed him of the DVT and how he was going to treat the patient." Greenberg then gave Clemens an injection of Lovenox and Eliquis, an oral anticoagulant. The report further stated that "[i]f in fact Dr. Landrum was told of the plan to anticoagulate the patient, it was a deviation from the standard of care by

Dr. Landrum to approve any such anticoagulation in this case," especially a nonreversible anticoagulant like Eliquis. Under the standard of care, Landrum should have informed the emergency department doctor to monitor the DVT with serial ultrasounds and not start anticoagulation.

¶ 11    On October 23, 2019, Landrum and Bellin filed a motion to dismiss the first amended complaint for lack of personal jurisdiction. Landrum and Bellin asserted in part that the only allegation that tried to connect Wisconsin-based Landrum and Bellin to the care Clemens received in Illinois was Clemens's unfounded claim that "on information and belief," Greenberg and Clemens discussed the need to anticoagulate Clemens. There was no foundation for the allegation that Greenberg discussed DVT treatment with Landrum, and in any event, that discussion would not satisfy the requirements for personal jurisdiction. Landrum's care was provided exclusively in Green Bay, and his interaction with Clemens was the result of her unilateral acts.

¶ 12    On January 7, 2020, the court entered an order that Landrum would be deposed over his objection. In a subsequent motion for a protective order, Landrum and Bellin noted that Clemens had requested leave to depose Landrum.

¶ 13    At his deposition on July 14, 2020, Landrum stated in part as follows. Landrum was Clemens's infectious disease physician for her endocarditis. At some point, Clemens stated that she would be going to Illinois periodically to spend time with her parents. Landrum told Clemens that he would continue to take care of her endocarditis, including her antibiotic care and management, but Clemens would need to receive all of her medical care in Green Bay. Also, Clemens would need to seek care for emergent issues in Illinois. A case manager made arrangements for Clemens to receive ongoing IV antibiotics and complete her labs, and Landrum's office received the results of those labs for monitoring purposes.

¶ 14     Landrum further recalled that on May 9, 2017, he received a phone call from Greenberg. Landrum described the call as "a brief maybe a couple minute phone call that was informative." Greenberg stated that Clemens was in the emergency room, Clemens's mother had asked Greenberg to call Landrum to update him on Clemens's status, tell Landrum that Clemens had what appeared to be a DVT in her leg, and that Greenberg was going to start Clemens on some anticoagulation. Landrum did not recall Greenberg mentioning what medicine Clemens would receive. According to Landrum, not enough information was shared for Landrum to have given a consult. Landrum did not ask Greenberg for more information, and Landrum did not recall if Greenberg asked if Clemens should have been given anticoagulants. There was no request that Landrum review any records. Between Clemens's emergency room visit and her brain bleed, Clemens's mother called Landrum's clinic, whereupon a nurse told her that Landrum's office was managing Clemens's infection with antibiotics and Clemens needed to see a primary care doctor about the anticoagulation. Landrum was not affiliated with any office in Illinois and did not have any relationships with Illinois health care providers or institutions. Landrum did not know whether Clemens had insurance through Blue Cross Blue Shield of Illinois or a Wisconsin subsidiary.

¶ 15     On August 25, 2020, Clemens responded to Landrum and Bellin's motion to dismiss, citing again to progress notes that are not in the record but were stated to be available for *in camera* review. According to Clemens, nothing had changed and no new facts had been asserted since the previous motion to dismiss. Landrum diagnosed an Illinois resident's disease, provided an ongoing, interstate course of treatment using an Illinois home nursing agency, and billed Clemens's Illinois-based insurance policy. A DVT was discovered between Clemens's interstate appointments with Landrum. At that point, Landrum "took part in a 'consult' " with Greenberg, an Illinois emergency physician.

¶ 16    In reply, Landrum and Bellin stated in part that Clemens's complaint was solely critical of treatment provided at the Illinois hospital on May 9, 2017. On that date, Landrum's only involvement was as the recipient of a phone call from Greenberg. None of Landrum's contacts with Illinois involved the date or occurrence at issue. Clemens did not provide any evidence that any of the alleged contacts—appointments with Landrum in Wisconsin, happenings with the nursing agency, or anything related to insurance—were a cause or contributing cause to Clemens's alleged injuries.

¶ 17    On September 30, 2020, the court entered a written order that denied Landrum and Bellin's motion to dismiss. Citing *Salerno v. Innovative Surveillance Technology, Inc.*, 402 Ill. App. 3d 490, 502 (2010), the court declined to review Landrum's deposition transcript because it was attached to Landrum and Bellin's reply, and evidence, arguments, or exhibits raised for the first time in a reply brief are waived. The court further stated that Landrum did not maintain sufficient minimum contacts to exercise general jurisdiction, but it was fair, just, and reasonable to exercise specific jurisdiction over Landrum and Bellin. Viewing the evidence in a light most favorable to Clemens, Landrum treated at least some Illinois patients, Clemens was an Illinois patient, and Landrum treated her on a weekly, continuous basis. Landrum knew that Clemens commuted from Illinois, billed Clemens under an insurance policy, and participated in her continued care, including the Peoria nursing agency and the alleged consultation with Greenberg.

¶ 18    On October 21, 2020, Landrum and Bellin filed a petition for leave to appeal under Illinois Supreme Court Rule 306(a)(3) (eff. Oct. 1, 2020), which this court denied on November 16, 2020. After Landrum and Bellin appealed to our supreme court, a supervisory order was entered that directed this court to allow the petition for leave to appeal. We did so and now consider the appeal.

¶ 19                                    II. ANALYSIS

¶ 20                              A. Landrum's Deposition

¶ 21    Because it bears on our resolution of this appeal, we first address the status of Landrum's deposition, which the circuit court refused to consider. To review, after Landrum and Bellin were converted to party defendants in Clemens's first amended complaint, they filed a motion to dismiss for lack of personal jurisdiction. Clemens then requested that Landrum be deposed. The deposition took place before Clemens responded to the motion to dismiss. The court declined to review the deposition transcript because it was attached to Landrum and Bellin's reply, and so it was waived.

¶ 22    Landrum and Bellin did not waive—or forfeit, for that matter—the use of the deposition transcript. See *People v. Blair*, 215 Ill. 2d 427, 444 n.2 (2005) (waiver is the voluntarily relinquishment of a known right, while forfeiture is the failure to timely assert a right). In stating that Landrum and Bellin's use of the deposition transcript was waived, the circuit court cited *Salerno*, 402 Ill. App. 3d at 502, which found that a plaintiff waived an argument by raising it for the first time in an appellate reply brief. *Salerno* does not address the circumstances here and offers no guidance on whether a party may cite to a deposition transcript in the way that Landrum and Bellin did in the circuit court.

¶ 23    Illinois Supreme Court Rule 201(*l*) (eff. July 1, 2014) allows a party to obtain discovery on the issue of personal jurisdiction when a motion to dismiss is pending. Clemens requested the deposition, and it was completed in time for Clemens to refer to it in her response. Landrum and Bellin did not voluntarily relinquish a known right or fail to timely assert a right by referring to a deposition that was provided for in our supreme court rules, requested by Clemens, and completed in a time frame that allowed both parties to make use of it. We will consider Landrum's deposition in our analysis of the issues raised on appeal. See *Zamora v. Lewis*, 2019 IL App (1st) 181642,

¶ 42 (when considering personal jurisdiction, the circuit court may consider the plaintiff's complaint, any affidavits submitted by the parties, and any discovery depositions).

¶ 24                                    B. Appellate Jurisdiction

¶ 25    Next, we consider the parties' arguments about our jurisdiction to consider this appeal. Landrum and Bellin contend that they timely appealed from the September 30, 2020, order that denied the motion to dismiss that was filed as their initial responsive pleading in their new status as party defendants. In contrast, Clemens asserts that we do not have jurisdiction because Landrum and Bellin did not timely appeal from the August 6, 2019, order that denied the motion to dismiss that they filed as respondents in discovery. Clemens argues that a party must seek review under Rule 306 within 30 days of a denial of a motion to dismiss, regardless of the party's procedural status.

¶ 26    The panel that considers an appeal has an independent duty to determine whether it has jurisdiction. *In re Estate of Gagliardo*, 391 Ill. App. 3d 343, 349 (2009). We recall that after Landrum and Bellin were named as respondents in discovery in Clemens's original complaint, they filed a motion to terminate their status as respondents in discovery and dismiss for lack of personal jurisdiction. The court denied that motion on August 6, 2019. Landrum and Bellin filed a motion to reconsider, which was denied on October 22, 2019. Clemens filed a first amended complaint that named Landrum and Bellin as party defendants. Landrum and Bellin filed a motion to dismiss for lack of personal jurisdiction, which was denied on September 30, 2020. Landrum and Bellin filed a petition for leave to appeal on October 21, 2020.

¶ 27    Illinois Supreme Court Rule 306(a)(3) (eff. Oct. 1, 2020) states that a party may petition for leave to appeal to the appellate court from an order of the circuit court denying a motion to dismiss for lack of personal jurisdiction. The petition must be filed within 30 days of the denial.

Ill. S. Ct. R. 306(c)(1) (eff. Oct. 1, 2020). The 30-day limit is jurisdictional, and the failure to meet it or secure a timely extension results in dismissal of the appeal. *Barnes v. Southern Ry. Co.*, 116 Ill. 2d 236, 241 (1987), *overruled on other grounds*, *Miller v. Consolidated R. Corp.*, 173 Ill. 2d 252 (1996). A motion to reconsider directed against an interlocutory order will not toll the 30-day limit. *Odom v. Bowman*, 159 Ill. App. 3d 568, 571 (1987). However, a motion that raises new matter may be considered a new motion, and "in that event tolling is not at issue, and an order denying the motion is appealable." *McClain v. Illinois Central Gulf R.R. Co.*, 121 Ill. 2d 278, 286 (1988); see also *Barnes*, 116 Ill. 2d at 244 (denial of motion was appealable where the motion was substantially independent of a prior motion, in that its content and basis "were such that it must be considered in the nature of a new, original motion and not a motion reviving and rearguing" what had already been presented).

¶ 28     Here, Landrum and Bellin's motion to dismiss the first amended complaint was a new motion that was based on changed circumstances. Landrum and Bellin were no longer respondents in discovery—they were party defendants. Section 2-402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-402 (West 2018)) allows a plaintiff to name as respondents in discovery those persons or entities whose culpability cannot be determined when the complaint is filed. *Westwood Construction Group, Inc. v. IRUS Property, LLC*, 2016 IL App (1st) 142490, ¶ 13. Respondents in discovery must respond to discovery in the same way as defendants and may be added as defendants if the evidence warrants it. 735 ILCS 5/2-402 (West 2018); *Westwood Construction Group, Inc.*, 2016 IL App (1st) 142490, ¶ 14. The stakes changed for Landrum and Bellin once Clemens converted them to defendants. No longer was Clemens gathering discovery to determine "whether a claim [could] be stated against potential defendants." See *Westwood Construction Group, Inc.*, 2016 IL App (1st) 142490, ¶ 13. Landrum and Bellin now had to defend against a

claim. See *Lewis v. Dillon*, 352 Ill. App. 3d 512, 520 (2004) ("being labelled a defendant has *** been recognized as a burden"). Landrum and Bellin's status as defendants was a significant change in circumstances that made the motion to dismiss the first amended complaint a new motion.

¶ 29    The first amended complaint also added new allegations that Greenberg and Landrum discussed the need to anticoagulate Clemens and that Landrum and Bellin deviated from the standard of care. Another changed circumstance was that Landrum had been deposed, which raised new facts about Landrum's involvement in Clemens's medical care and the alleged phone call from Greenberg, among other topics. The addition of new facts in the motion to dismiss the first amended complaint contrasts with the cases cited by Clemens, in which denials of motions were not appealable because those motions only added detail to what had already been presented. See *Law Offices of Jeffery M. Leving, Ltd. v. Cotting*, 345 Ill. App. 3d 495, 500 (2003) (facts in motion to reconsider were more detailed, but not necessarily new facts that came to light between motions); *National Seal Co. v. Greenblatt*, 321 Ill. App. 3d 306, 309 (2001) (motion to reconsider did not allege any new facts and merely included more details in support of arguments raised in the original motion); *Buckland v. Lazar*, 145 Ill. App. 3d 436, 440-41 (1986) (the plaintiff never contended that the second motion was new and posited that the second motion should be considered part of resolving the first motion).

¶ 30    Further, as Landrum and Bellin note, they had to object to personal jurisdiction after Clemens named them party defendants or they would have lost the ability to raise the issue. A party waives an objection to personal jurisdiction if he files a responsive pleading or other motion, other than a motion seeking an extension of time to answer or appear, before filing the motion objecting to jurisdiction. 735 ILCS 5/2-301(a-6) (West 2018); *Cardenas Marketing Network, Inc. v. Pabon*, 2012 IL App (1st) 111645, ¶¶ 23-24.

¶ 31    Based on Landrum and Bellin's changed status to party defendants and the new facts raised in the first amended complaint and Landrum's deposition, the motion to dismiss the first amended complaint was a new motion. After it was denied, Landrum and Bellin timely filed a petition for leave to appeal to this court, granting us jurisdiction.

¶ 32                                  C. Personal Jurisdiction

¶ 33    Turning to the merits of the appeal, Landrum and Bellin contend that they are not subject to the circuit court's specific personal jurisdiction. Landrum and Bellin state that the analysis focuses on their relationship to Illinois and not on their relationship with Clemens. Her unilateral decision to periodically stay with her parents did not mean that Landrum purposefully directed his activities at Illinois. Landrum and Bellin also argue that in finding that there was specific personal jurisdiction, the circuit court incorrectly relied on activities that were unrelated to Clemens's lawsuit.

¶ 34    As the plaintiff, Clemens had the burden to establish a *prima facie* basis for exercising personal jurisdiction over Landrum and Bellin, who are nonresident defendants. *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 16. A plaintiff's *prima facie* case may be overcome by the defendants' uncontradicted evidence that defeats jurisdiction. *Campbell v. Acme Insulations, Inc.*, 2018 IL App (1st) 173051, ¶ 10. Any conflicts in the pleadings and affidavits are resolved in the plaintiff's favor (*id.*), but any unrebutted allegations are taken as true (*Zamora*, 2019 IL App (1st) 181642, ¶ 42). Where well-alleged facts in an affidavit are not contradicted by a counteraffidavit, they must be taken as true notwithstanding the existence of contrary facts in the adverse party's pleadings. *Robertsson v. Misetic*, 2018 IL App (1st) 171674, ¶ 13. When the circuit court decides the jurisdictional question only on documentary evidence, without an evidentiary hearing, our review is *de novo*. *Id.*

¶ 35 Section 2-209 of the Code, commonly referred to as the Illinois long-arm statute, governs the exercise of personal jurisdiction over nonresident defendants and is divided into subsections identifying various grounds for exercising jurisdiction. 735 ILCS 5/2-209 (West 2018); *Russell v. SNFA*, 2013 IL 113909, ¶ 29. Historically, as a first step in the analysis, courts would determine whether a specific statutory provision of the long-arm statute was satisfied, such as "[t]he commission of a tortious act within this State." 735 ILCS 5/2-209(a)(2) (West 2018); *Russell*, 2013 IL 113909, ¶ 29. That step has been eliminated with the addition of subsection (c), which is known as the "catch-all provision." 735 ILCS 5/2-209(c) (West 2018); *Russell*, 2013 IL 113909, ¶ 30. Section 2-209(c) provides that courts "may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West 2018). The catch-all provision is an independent basis for exercising personal jurisdiction. *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 386 (2005). If the contacts between the defendants and Illinois satisfy federal and state due process concerns, then the requirements of Illinois's long-arm statute have been met, and no other inquiry is needed. *Id.* at 387. Though Clemens briefly refers to the ability of a court to exercise jurisdiction based on the commission of a tortious act, we will only consider whether exercising personal jurisdiction over Landrum and Bellin satisfies federal due process concerns. See *Rios*, 2020 IL 125020, ¶ 17 (only considering federal constitutional principles because the party challenging jurisdiction did not argue that the Illinois Constitution imposed any greater restraints on the exercise of jurisdiction than the federal constitution).

¶ 36 A state court may exercise personal jurisdiction over nonresident defendants if the defendants have certain minimum contacts with the state " 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Id.* ¶ 18 (quoting

*Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). Whether the minimum contacts test has been satisfied depends on whether the plaintiff seeks general or specific jurisdiction. *Russell*, 2013 IL 113909, ¶ 36. The standard for finding general jurisdiction is very high, requiring that the nonresident defendants carried out "systematic business activity in Illinois *** with a fair measure of permanence and continuity." *Robertsson*, 2018 IL App (1st) 171674, ¶ 15. Clemens does not assert that the court should exercise general jurisdiction over Landrum and Bellin.

¶ 37    At issue here is specific jurisdiction, which is "case-specific" and "exists when the plaintiff's cause of action arises out of or relates to the [defendants'] contacts with the forum state." *Id.* Specific jurisdiction is proper only if the defendants have purposefully directed their activities at residents of the forum and " 'if the litigation results from alleged injuries that arise out of or relate to those activities.' " *Rios*, 2020 IL 125020, ¶ 20 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "[T]he [defendants'] litigation-related 'conduct must create a substantial connection with the forum State.' " *Zamora*, 2019 IL App (1st) 181642, ¶ 46 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). If there is a substantial connection, then we consider whether it would be reasonable to require the defendants to litigate in the forum state. *Id.* ¶ 48.

¶ 38    According to Clemens, Landrum admitted that he treated Clemens while she was in Illinois. Landrum referred Clemens to a Peoria nursing agency, prescribed antibiotics to Clemens while she was in Illinois, and received Clemens's lab results for monitoring purposes. According to Clemens, Landrum was part and parcel of Clemens's ongoing medical treatment in Illinois.

¶ 39    Yet, the allegations against Landrum and Bellin in Clemens's first amended complaint do not refer to Clemens's care from the Peoria nursing agency, the antibiotics that Landrum prescribed, or Clemens's lab results. Clemens's cause of action relates only to the care she

received at an Illinois facility for a DVT. We focus on Landrum's involvement in that occurrence. See *Robertsson*, 2018 IL App (1st) 171674, ¶ 23 (relevant time period for determining whether contacts were purposefully directed toward the forum state begins when the claim arose). There are two documents that are relevant—the medical report attached to Clemens's first amended complaint and Landrum's deposition. Landrum and Bellin assert that the medical report cannot serve as an affidavit for the purposes of a motion to dismiss for lack of personal jurisdiction. Even taking the medical report into account, it does not carry the day for Clemens. It stated that Greenberg had a conversation with Landrum, informed Landrum of the DVT and how he would treat Clemens, and then administered Lovenox and Eliquis. Key details about the conversation with Greenberg are filled in by Landrum's deposition. According to Landrum, the phone call was prompted by Clemens's mother and was brief and informative. Landrum did not recall Greenberg mentioning what medicine Clemens would receive. Not enough information was shared for Landrum to have given a consult, and there was no request for Landrum to review any records. This brief phone call is the totality of Landrum's involvement in the basis for Clemens's suit.

¶ 40      As noted above, for a state to exercise personal jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Due process requires that a defendant be subjected to proceedings in the forum state based on his own affiliation with the state and not based on " 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King Corp.*, 471 U.S. at 475). The phone call—the only act that connects Landrum to Clemens's cause of action—falls well short of a substantial connection with Illinois. The call was initiated by Clemens's mother and Greenberg. Landrum's participation was extremely limited, and he did

not provide any input into the treatment plan. To subject Landrum to personal jurisdiction based on this attenuated connection with Illinois would violate due process. See *Hanson v. Ahmed*, 382 Ill. App. 3d 941, 945 (2008) (participation in two phone calls initiated by an Illinois claims adjuster were "extremely attenuated" contacts with Illinois and so did not constitute minimum contacts with Illinois sufficient to establish personal jurisdiction and satisfy due process). Because Landrum and Bellin did not have sufficient minimum contacts for an Illinois court to exercise personal jurisdiction, we need not consider whether it would be reasonable to require Landrum and Bellin to litigate in Illinois. See *Russell*, 2013 IL 113909, ¶ 87 (a court must consider the reasonableness of requiring defendants to litigate in Illinois if the court determines that the defendants have sufficient minimum contacts with Illinois).

¶ 41                                         III. CONCLUSION

¶ 42     Clemens did not meet her burden to establish that Landrum and Bellin are subject to personal jurisdiction in Illinois. The order of the circuit court that denied Landrum and Bellin's motion to dismiss for lack of personal jurisdiction is reversed, and the matter is remanded with directions to enter an order dismissing Landrum and Bellin as party defendants.

¶ 43     Reversed and remanded with directions.

*Clemens v. Greenberg*, 2022 IL App (1st) 201129

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-3362; the Hon. Christopher E. Lawler, Judge, presiding. |
| **Attorneys for Appellant:** | Julie A. Teuscher, John J. Reid, and Ruth Anne B. Waldrop, of Cassiday Schade LLP, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Robert J. Napleton and Bradley Z. Schulman, of Motherway & Napleton, LLP, of Chicago, and Lynn D. Dowd, of Naperville, for appellee. |