2024 IL App (4th) 231531

NO. 4-23-1531

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 12, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CARRIE HIGGINS, as Administrator of the Estate of | ) | Appeal from the |
| Jazmin Malson, Deceased, | ) | Circuit Court of |
|      Plaintiff-Appellant, | ) | Adams County |
|      v. | ) | No. 22LA22 |
| BLESSING HOSPITAL, an Illinois Not-For-Profit | ) | |
| Corporation; BLESSING HEALTH SYSTEM, an | ) | Honorable |
| Assumed Name of Blessing Corporate Services, Inc., an | ) | Scott D. Larson, |
| Illinois Not-For-Profit Corporation; MARK BAKER, | ) | Judge Presiding. |
| M.D.; AMJAD MUSLEH, M.D.; MUHAMMAD | ) | |
| FARAZ MASOOD, M.D.; and THE WASHINGTON | ) | |
| UNIVERSITY, a Missouri Nonprofit Corporation, | ) | |
|      Defendants | ) | |
| | ) | |
| (Amjad Musleh, M.D., Muhammad Faraz Masood, M.D., | ) | |
| and The Washington University, a Missouri Nonprofit | ) | |
| Corporation, | ) | |
|      Defendants-Appellees). | ) | |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Justices Steigmann and Vancil concurred in the judgment and opinion.

**OPINION**

¶ 1    In July 2022, plaintiff, Carrie Higgins, a representative of the estate of Jazmin

Malson, deceased, filed her initial complaint against defendants Blessing Hospital, Blessing

Health System, Dr. Mark Baker, Barnes-Jewish Hospital, Dr. Amjad Musleh, and Dr.

Muhammad Masood. Plaintiff subsequently served defendant the Washington University with an amended version of the complaint in October 2022. Dr. Musleh and Dr. Masood moved to dismiss the claims against them for lack of personal jurisdiction or for failure to state a cause of action. See 735 ILCS 5/2-301, 2-615 (West 2022). Washington University filed a motion to dismiss on similar grounds. After a hearing, the circuit court granted their combined motions to dismiss. Plaintiff appeals.

¶ 2                              I. BACKGROUND

¶ 3                          A. The Underlying Events

¶ 4          On September 22, 2020, Malson went to Blessing Hospital in Quincy, Illinois, complaining of headaches; pain in her back, chest, and shoulder; and vision problems. Dr. Baker, Malson's attending physician, determined she would require extracorporeal membrane oxygenation (ECMO). Dr. Baker sought to transfer Malson to Barnes-Jewish Hospital in St. Louis, Missouri, due to its advanced ECMO capabilities. During the transfer process, Dr. Baker conducted several phone calls with Dr. Musleh and Dr. Masood, who were the on-call physicians at Barnes-Jewish Hospital. Barnes did not have a bed immediately available, so Dr. Baker asked for input regarding how to stabilize Malson until a bed became available. Dr. Musleh suggested giving her esmolol, and Dr. Baker did so. After the esmolol was administered, Malson went into cardiac arrest, and Dr. Baker subsequently stopped the administration. Malson was transferred to Barnes-Jewish Hospital on September 22, 2020, where she died the following day.

¶ 5          On July 21, 2022, plaintiff filed her first complaint in Adams County against Blessing Hospital, Blessing Health System, Dr. Baker, Barnes-Jewish Hospital, Dr. Musleh, and Dr. Masood. The complaint alleged Malson's death resulted from the advice Dr. Baker received

from Dr. Musleh and Dr. Masood to administer esmolol. Plaintiff subsequently sought leave to file an amended complaint adding Washington University as a defendant.

¶ 6        Dr. Musleh and Dr. Masood moved to dismiss all claims against them for lack of jurisdiction, or, alternatively, for failure to state a claim. See 735 ILCS 5/2-301, 2-615 (West 2022). Soon after, Washington University filed a combined motion to dismiss counts III and IV of the amended complaint on similar grounds. See 735 ILCS 5/2-301, 2-615(a) (West 2022).

¶ 7                              B. Dr. Musleh

¶ 8        Dr. Musleh is an emergency medicine and critical care physician employed by Washington University. He lives in Missouri and maintains his professional office there. He is licensed to practice medicine in Illinois, but he does not advertise himself as actively practicing there. He has practiced in Illinois just once. He did not provide care to patients in Illinois at any point from September 2020, when plaintiff's claim arose, through October 2022, when he was served with the initial complaint. Dr. Musleh has never been to Blessing Hospital, and he does not have clinical privileges there. The phone calls at issue in this case constituted Dr. Musleh's only interactions with a physician or nurse regarding a patient at Blessing Hospital.

¶ 9                              C. Dr. Masood

¶ 10       Dr. Masood is a cardiothoracic surgeon employed by Washington University. He lives in Missouri and maintains his professional office there. He provided backup cardiothoracic surgical coverage at Blessing Hospital on two occasions pursuant to a lease agreement between Washington University and Blessing Hospital. During those instances, Blessing Hospital billed the patients or any third-party payors for Dr. Masood's services, not Washington University, and Blessing Hospital paid his travel and lodging costs. During the underlying events, Dr. Masood was in Missouri and not on lease to Blessing Hospital.

¶ 11                                    D. Washington University

¶ 12          Washington University is a corporation "created by, organized and existing under the Acts of the General Assembly of the State of Missouri," and it maintains its principal place of business in Missouri. It conducts approximately 98% of its business in Missouri. It does not operate any healthcare facilities in Illinois, nor does it see or treat patients there. Washington University maintains an agreement under which it will occasionally lease cardiothoracic surgeons to Blessing Hospital. However, Washington University had only sent cardiothoracic surgeons to Blessing Hospital on four occasions, all of which occurred in 2021, and no such surgeon provided care to Malson while she was in Blessing Hospital during the events at issue. During the relevant times, Blessing Hospital billed, collected, and retained payment from the patients and third-party payors, and it paid Washington University a *per diem* for backup cardiothoracic surgical coverage. Washington University did not bill any patients or third-party payors for the services provided by the employees it leased to Blessing Hospital. Malson did not receive any care from a Washington University employee when she was in Illinois.

¶ 13          Washington University Physicians in Illinois (WUPI) is an Illinois not-for-profit organization affiliated with Washington University that provides services exclusively in Illinois. WUPI physicians are full-time faculty members of the Washington University School of Medicine. Neither Dr. Musleh nor Dr. Masood was acting as a WUPI employee during the relevant times, and plaintiff did not name WUPI as a defendant or raise any claims against it.

¶ 14                                    E. The Motion to Dismiss

¶ 15          On May 2, 2023, the circuit court conducted a hearing on the combined motion to dismiss. Defendants argued Illinois lacked general jurisdiction over Washington University because it is organized in Missouri and its principal place of business is in Missouri. Specifically,

defendants contended WUPI was a separate corporation, its actions are not attributable to Washington University, the university's leasing agreements in Illinois were not sufficient contacts because they represented a small portion of its revenue, and its recruitment of Illinois students did not grant Illinois general jurisdiction over it. Plaintiff conceded she was abandoning the argument Illinois had general jurisdiction over Dr. Musleh or Dr. Masood.

¶ 16 Defendants also argued Illinois lacked specific jurisdiction over Washington University, Dr. Musleh, and Dr. Masood, citing *Allen v. Missouri Baptist Medical Center*, 2022 IL App (5th) 210263, to assert "an out-of-state healthcare provider's representation [of] expertise resulting in patient referrals cannot be enough to establish specific jurisdiction." Defendants asserted Dr. Musleh and Dr. Masood did not avail themselves of the benefits or protections of the law of Illinois and neither did Washington University by extension, such that Illinois did not have specific jurisdiction over them.

¶ 17 Plaintiff insisted contacts between defendants and Illinois during the underlying events granted Illinois specific jurisdiction over them. Plaintiff argued it was not unfair to expect Dr. Musleh and Dr. Masood—and their employer, Washington University—to defend their actions in Illinois after providing medical advice that was carried out in Illinois. Plaintiff asserted the phone calls were "clearly done directly for patient care" and contended Dr. Baker would not have administered esmolol if Dr. Musleh and Dr. Masood did not tell him to do so. Additionally, plaintiff argued Washington University was subject to general jurisdiction in Illinois because it "extensively and repeatedly" provided medical care in Illinois and advertised to attract students from Illinois and because WUPI was a "wholly owned subsidiary" that makes the university "millions of dollars."

¶ 18          On October 30, 2023, the circuit court entered a written order granting defendants' respective motions to dismiss counts III and IV of the first amended complaint, finding it lacked jurisdiction over Dr. Musleh, Dr. Masood, and Washington University. It asserted "the issue before the court is whether communicating with Dr. Baker over the telephone gives Illinois specific jurisdiction over the Missouri doctors." In its order, the court made the following findings:

> "Here, the court finds that Drs. Musleh and Masood were on call and therefore were the recipients of a call placed by Dr. Mark Baker seeking a transfer of his patient. Drs. Musleh and Masood did not initiate or procure the phone call in any manner. The doctors were not specifically requested by Dr. Baker. There was no prior relationship between the doctors. The Missouri doctors had no prior relationship with the Illinois patient. Dr. Baker was the patient's treating physician seeking information on a difficult case and preparing the patient for transfer. Simply communicating via phone with Dr. Baker in Illinois does not give the Missouri doctors fair warning that the informational phone call could be used as the basis to hale the doctors into court in Illinois. [Citation.] Dr. Baker was under no order or requirement to implement any advice or recommendations provided during the phone call(s). A finding by this court that specific jurisdiction would attach to the out of state doctors under these facts would violate defendants' due process rights."

The court also found it did not have general jurisdiction over Washington University.

¶ 19        On November 29, 2023, the circuit court granted plaintiff's motion requesting a Rule 304(a) finding, determining no just reason existed to delay plaintiff's appeal from the dismissal. See Ill. S. Ct. R. 304(a) (eff. March 8, 2016).

¶ 20        This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22        On appeal, plaintiff argues the circuit court erred in granting the combined motion to dismiss, contending the court had specific personal jurisdiction over defendants because, *inter alia*, plaintiff's claims arose from defendants' contacts with Illinois or, alternatively, Washington University made Illinois its second home, thereby submitting itself to general personal jurisdiction here. We disagree.

¶ 23        "Before an Illinois court may exercise jurisdiction over a nonresident defendant, that court must ensure its exercise of jurisdiction comports with traditional notions of fair play and substantial justice." (Internal quotation marks omitted.) *Unterreiner v. Pernikoff*, 2011 IL App (5th) 110006, ¶ 5, 961 N.E.2d 1. A circuit court must consider the following:

> "(1) whether the nonresident defendant had 'minimum contacts' with the forum State such that it had 'fair warning' that it may be required to defend there; (2) whether the action arose out of or relate[d] to the defendant's contacts with the forum; and (3) whether it is reasonable to require the defendant to litigate in the forum State." *Culligan International Co. v. Wallace, Ross, & Sims*, 273 Ill. App. 3d 230, 231, 650 N.E. 565, 567 (1995).

"It is settled that the plaintiff has the burden to establish a *prima facie* basis to exercise personal jurisdiction over a nonresident defendant." *Russell v. SNFA*, 2013 IL 113909, ¶ 28, 987 N.E.2d 778. When the court bases its personal jurisdiction determination solely on documentary

evidence, without an evidentiary hearing, we review the decision *de novo*. *Unterreiner*, 2011 IL App (5th) 110006, ¶ 5.

¶ 24        The Illinois long-arm statute authorizes Illinois courts to exercise personal jurisdiction over nonresident defendants "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West 2022). Under this provision, "the issue is whether a nonresident defendant's contacts with Illinois are sufficient to satisfy federal and Illinois due process standards." *Solomon v. Center for Comprehensive Services, Inc.*, 2023 IL App (5th) 210391, ¶ 38, 217 N.E.3d 1079.

¶ 25        "The 'minimum contacts' required for personal jurisdiction differ depending upon whether general jurisdiction or special jurisdiction is asserted." *Solomon*, 2023 IL App (5th) 210391, ¶ 39. General jurisdiction is considered "all-purpose," and it exists when a nonresident defendant's contacts with the forum state are "so continuous and systematic" they render him "essentially at home" in the forum state. (Internal quotation marks omitted.) *Solomon*, 2023 IL App (5th) 210391, ¶ 40. "Specific jurisdiction is case-specific," and it exists when a "cause of action arises out of or relates to a defendant's contacts with the forum state." (Internal quotation marks omitted.) *Solomon*, 2023 IL App (5th) 210391, ¶ 41. Where a defendant "has purposely directed his activities at the forum's residents and the cause of action arose out of or related to those activities," the exercise of specific jurisdiction is appropriate. (Internal quotation marks omitted.) *Solomon*, 2023 IL App (5th) 210391, ¶ 41. "There must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (Internal quotation marks omitted.) *Solomon*, 2023 IL App (5th) 210391, ¶ 41. The purposeful availment requirement "protects a nonresident defendant from being brought into a jurisdiction based on random or attenuated

- 8 -

contacts or the unilateral activity of another person." *Solomon*, 2023 IL App (5th) 210391, ¶ 41. Whether "sufficient minimum contacts" exist for the exercise of personal jurisdiction "depends upon the facts of each case." (Internal quotation marks omitted.) *Unterreiner*, 2011 IL App (5th) 110006, ¶ 5.

¶ 26                                    A. Specific Jurisdiction

¶ 27         First, we address plaintiff's claim the circuit court had specific personal jurisdiction over Dr. Musleh, Dr. Masood, and Washington University. Plaintiff argues the cause of action arose directly out of Dr. Musleh's and Dr. Masood's contacts with Illinois, which are attributable to their employer Washington University, and therefore personal jurisdiction existed. Plaintiff contends Dr. Musleh and Dr. Masood "directed their activities at Illinois" and those activities gave rise to the issues raised in the amended complaint. Below we review several of the cases cited by the parties.

¶ 28         1. *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*

¶ 29         In *Kostal*, the plaintiff was an Illinois resident who visited her physician in Illinois. *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 383, 827 N.E.2d 1031 (2005). The plaintiff's physician obtained tissue samples from her and sent those samples to the defendants, who were doctors working at a pathological laboratory incorporated in Michigan. *Kostal*, 357 Ill. App. 3d at 383. The laboratory operated on a national basis, providing expert diagnostic analysis by mail. *Kostal*, 357 Ill. App. 3d at 383. The defendants processed and analyzed the samples in Michigan, drafted reports in Michigan, and sent the reports to the plaintiff's physician in Illinois. *Kostal*, 357 Ill. App. 3d at 383. The plaintiff filed suit, alleging those reports were inaccurate and she suffered severe and permanent physical injury as a result of the defendants' negligence. *Kostal*, 357 Ill. App. 3d at 383. On appeal, the

reviewing court emphasized the defendants "accepted a pathology sample of a patient, subsequently sent a diagnostic report to the physician in the forum state, and knew that the report would be the basis of further treatment in the forum state." *Kostal*, 357 Ill. App. 3d at 397-98. Based on the quality and nature of the defendants' actions relating to Illinois, and the interests affected by those actions, the reviewing court found personal jurisdiction over the defendants existed. *Kostal*, 357 Ill. App. 3d at 398.

¶ 30                          2. *Allen v. Missouri Baptist Medical Center*

¶ 31          In *Allen*, the plaintiff filed suit against a medical center located in Missouri on behalf of a decedent who was an Illinois resident. *Allen*, 2022 IL App (5th) 210263, ¶¶ 3-4. During the underlying events, an Illinois physician performed surgery on the decedent, who subsequently developed further complications. *Allen*, 2022 IL App (5th) 210263, ¶ 4. The Illinois physician contacted a Missouri physician with practicing privileges at the defendant medical center and arranged for the patient's transfer to the defendant medical center. *Allen*, 2022 IL App (5th) 210263, ¶ 4. On appeal, plaintiff argued personal jurisdiction existed because the defendant medical center " 'purposely directs its activities to Illinois facilities and patients, and it agreed to a request by the Illinois defendants to accept [the decedent] as a patient.' " *Allen*, 2022 IL App (5th) 210263, ¶ 5. The plaintiff also alleged the defendant medical center " 'was engaged in the business of providing medical care and accepting referrals of patients in Madison County, Illinois[,] by and through its officers, *** employees[,] and representatives' " during all relevant times. *Allen*, 2022 IL App (5th) 210263, ¶ 5. The reviewing court found Illinois did not have personal jurisdiction over the defendant medical center because the alleged tortious conduct occurred in Missouri, the plaintiff put forth no evidence the medical center induced the decedent to leave Illinois to come to Missouri, and there was no evidence the medical center induced the

- 10 -

attending Illinois physician to refer the decedent there. *Allen*, 2022 IL App (5th) 210263, ¶ 26. Based on this, the reviewing court found "the subsequent alleged medical negligence of a health care provider, without more, does not 'arise out of' the acceptance of the transfer of patient." *Allen*, 2022 IL App (5th) 210263, ¶ 26.

¶ 32    The reviewing court in *Allen* rejected the implication that the medical center's alleged routine acceptance of patients from Illinois, on its own, provided a basis for specific jurisdiction. *Allen*, 2022 IL App (5th) 210263, ¶ 27. While the court noted "the number of patients a health care facility sees would be evidence of business activity within a state," it emphasized "the acceptance of other individuals unrelated to the lawsuit is not relevant unless it demonstrates activity that would be directed at Illinois residents or the injured party or that the defendant is availing itself of Illinois laws or protections." *Allen*, 2022 IL App (5th) 210263, ¶ 27. The court observed "the relationship between [the defendant medical center] and [the decedent] began with an unsolicited and unilateral phone call from [the decedent's] Illinois physician to [the defendant medical center]." *Allen*, 2022 IL App (5th) 210263, ¶ 27. The court concluded

> "[w]hile it is true that [the defendant medical center] accepted an Illinois resident as a patient, it did so at its Missouri facility. This is simply not a case of [the defendant medical center] doing anything that might be construed as availing itself of the benefits or protections of Illinois laws." *Allen*, 2022 IL App (5th) 210263, ¶ 27.

¶ 33    Further, the *Allen* court distinguished *Kostal*, highlighting that, in *Kostal*, "the plaintiff did not travel out of the State of Illinois to receive medical care and *** [the] defendants purposefully directed activities to Illinois through their mail-based diagnostic services." *Allen*,

- 11 -

2022 IL App (5th) 210263, ¶ 28 (citing *Kostal*, 357 Ill. App. 3d at 397-98). Conversely, in *Allen*, the decedent "physically traveled to Missouri for medical treatment," the defendant medical center did not render treatment in Illinois, the defendant medical center did not have an ongoing relationship with the referring Illinois physician, and "[t]he only contact with Illinois is [the defendant medical center's] acceptance of the transfer of an Illinois resident to its facility." *Allen*, 2022 IL App (5th) 210263, ¶ 29. The *Allen* court determined "the mere fact that the reputation and expertise of an institution lead to referrals from out of state cannot be enough to establish specific jurisdiction." *Allen*, 2022 IL App (5th) 210263, ¶ 29.

¶ 34                        3. *Solomon v. Center for Comprehensive Service, Inc.*

¶ 35            In *Solomon*, the defendant physician at issue was licensed in Indiana, his medical office was in Indiana, and his contacts with the plaintiff took place in his office. *Solomon*, 2023 IL App (5th) 210391, ¶ 42. The physician "did not target advertising to Illinois residents or otherwise promote their business in Illinois." *Solomon*, 2023 IL App (5th) 210391, ¶ 42. The reviewing court noted the defendant physician did not have a business relationship with the primary Illinois-based defendant medical organization, he did not refer the plaintiff to that organization, he did not consult with that organization's employees, and he did not treat plaintiff while she was at that organization's facility. *Solomon*, 2023 IL App (5th) 210391, ¶ 43. Based on this, the reviewing court found the plaintiff "did not establish that [the defendant physician and his employer] purposefully directed their activities toward Illinois residents and that the cause of action arose out [of] those activities" and therefore the circuit court lacked specific personal jurisdiction. *Solomon*, 2023 IL App (5th) 210391, ¶ 44.

¶ 36                              4. *Clemens v. Greenberg*

- 12 -

¶ 37     In *Clemens*, the plaintiff was an Illinois resident, while the defendant physician at issue and his employer were based in Wisconsin. *Clemens v. Greenberg*, 2022 IL App (1st) 201129, ¶¶ 1, 7, 224 N.E.3d 762. The physician argued the Illinois circuit court lacked personal jurisdiction over him because he provided care to the plaintiff exclusively in Wisconsin, he did not practice in Illinois, he was not licensed to practice medicine in Illinois, he "did not have a significant number of Illinois patients compared to his Wisconsin patient population," and he neither advertised his services in Illinois nor solicited business in Illinois from Illinois residents. *Clemens*, 2022 IL App (1st) 201129, ¶ 4. On May 9, 2017, the defendant physician received a phone call from an Illinois-based physician who was treating the plaintiff. *Clemens*, 2022 IL App (1st) 201129, ¶ 14. During the " 'brief' " call, which lasted " 'maybe a couple minute[s],' " the defendant learned the plaintiff was in the emergency room, and he received an update on the plaintiff's status. *Clemens*, 2022 IL App (1st) 201129, ¶ 14. The defendant did not receive enough information to provide a consultation, he was not asked to review any records, and he did not request additional information. *Clemens*, 2022 IL App (1st) 201129, ¶ 14.

¶ 38     On appeal, the reviewing court determined the phone call was the only connection between the defendant physician and the plaintiff's cause of action, and it fell "well short of a substantial connection with Illinois." *Clemens*, 2022 IL App (1st) 201129, ¶ 40. The court described the defendant's participation as "extremely limited," and it noted he "did not provide any input into the treatment plan." *Clemens*, 2022 IL App (1st) 201129, ¶ 40. Accordingly, the court found the defendant "did not have sufficient minimum contacts for an Illinois court to exercise personal jurisdiction." *Clemens*, 2022 IL App (1st) 201129, ¶ 40.

¶ 39                         5. *Unterreiner v. Pernikoff*

¶ 40    In *Unterreiner*, the plaintiffs were Illinois residents, while the defendant physician was a Missouri resident. *Unterreiner*, 2011 IL App (5th) 110006, ¶ 3. The defendant was licensed to practice in Missouri but not Illinois. *Unterreiner*, 2011 IL App (5th) 110006, ¶ 3. The defendant never advertised for clients in Illinois, nor did he own or lease any real or personal property in Illinois. *Unterreiner*, 2011 IL App (5th) 110006, ¶ 3. The defendant treated one of the plaintiffs in Missouri. *Unterreiner*, 2011 IL App (5th) 110006, ¶ 3. In September 2008, one of defendant's employees called the patient's home and left a voice message conveying her test results. *Unterreiner*, 2011 IL App (5th) 110006, ¶ 3. The patient returned the call and was instructed to take more medication before returning to the defendant's office a month later. *Unterreiner*, 2011 IL App (5th) 110006, ¶ 3. Before the patient's return appointment, she suffered a stroke, which resulted in serious injuries. *Unterreiner*, 2011 IL App (5th) 110006, ¶ 3. The plaintiffs subsequently sued the defendant in Illinois, alleging negligent care. *Unterreiner*, 2011 IL App (5th) 110006, ¶ 3.

¶ 41    On appeal, the reviewing court found no personal jurisdiction, noting the defendant physician was licensed to practice only in Missouri, his office was in Missouri, he never advertised for clients in Illinois, and the plaintiffs "unilaterally sought out the defendants and traveled to Missouri to receive treatment." *Unterreiner*, 2011 IL App (5th) 110006, ¶ 9. The court asserted

> "[a]lthough it is true *** that the defendants could have required [the plaintiff] to visit their office in Missouri to receive the advice to adjust her [medication] levels, we do not believe the fact that the defendants chose to so advise her, in a solitary phone call, can be equated with the defendants having 'voluntarily invoked the protections and benefits of the laws of the [S]tate' of Illinois. See,

*e.g.*, *Muffo v. Forsyth*, 37 Ill. App. 3d 6, 9 (1976).” *Unterreiner*, 2011 IL App (5th) 110006, ¶ 9.

The court described the defendant physician's contact with Illinois as "far too attenuated and fortuitous to support jurisdiction." *Unterreiner*, 2011 IL App (5th) 110006, ¶ 9.

¶ 42                                6. *This Case*

¶ 43        Based on the foregoing body of caselaw and the principles therein, the circuit court properly found it lacked personal jurisdiction over defendants. Both Dr. Musleh and Dr. Masood live in Missouri and maintain their professional offices there. Neither physician owns or leases any real or personal property in Illinois. Neither advertises themselves as actively practicing medicine in Illinois. Neither physician ordered any medication to be administered to Malson while she was in Illinois. Their only connection to Illinois relating to the cause of action was phone calls with Dr. Baker, Malson's attending physician at Blessing Hospital, to coordinate Malson's transfer to Barnes-Jewish Hospital for ECMO treatment. When the doctors learned it would be several hours before Barnes-Jewish Hospital could receive Malson, Dr. Baker asked for advice on how to stabilize Malson while they waited for a bed to become available. The advice provided by Dr. Musleh and Dr. Masood was focused solely on facilitating Malson's transfer. Neither Dr. Musleh nor Dr. Masood initiated these phone calls, nor did any other employee of Washington University. We cannot say that, by offering suggestions aimed at stabilizing Malson in anticipation of transferring her to Barnes-Jewish Hospital for further treatment, Dr. Musleh and Dr. Masood—and by extension their employer, Washington University—purposely availed themselves of the of the benefits and protections of the laws of Illinois. See *Solomon*, 2023 IL App (5th) 210391, ¶ 41.

¶ 44        In so holding, we reiterate our findings in *Reynolds v. Decatur Memorial Hospital*, 277 Ill. App. 3d 80, 660 N.E.2d 235 (1996). There, an attending pediatrician conducted a phone conversation with another physician, during which the former shared the patient's condition and the events precipitating the patient's hospital admittance, and the latter asked clarifying questions before suggesting a specific diagnostic procedure. *Reynolds*, 277 Ill. App. 3d at 81-83. We held the phone conversation did not create a physician-patient relationship between the patient and the nonattending physician. *Reynolds*, 277 Ill. App. 3d at 86. We observed that finding a physician-patient relationship under those circumstances would "have a chilling effect upon the practice of medicine" and "stifle communication, education[,] and professional association *** to the detriment of the patient." *Reynolds*, 277 Ill. App. 3d at 86. We concluded such a ruling would likely curb or eliminate informal conferences between physicians, which "would inhibit the exchange of information and expertise among physicians and would not benefit the medical profession or persons seeking treatment." *Reynolds*, 277 Ill. App. 3d at 86-87. The same is true here. To find Illinois has specific personal jurisdiction over defendants would be to punish physicians, and their employers by extension, for assisting in a patient's transfer to their facility for specialized treatment. Such a finding might motivate a healthcare provider to cease making its physicians available via teleconference to other jurisdictions' facilities to avoid risking liability there. As in *Reynolds*, we refuse to inhibit the exchange of information and expertise between physicians to the detriment of patients seeking treatment and the medical profession writ large. See *Reynolds*, 277 Ill. App. 3d at 86-87.

¶ 45                                B. General Jurisdiction

¶ 46        Plaintiff also argues Illinois has general jurisdiction over Washington University because its "substantial contacts with Illinois make it essentially at home" here. Plaintiff

- 16 -

contends the university's "continuous, systematic, and substantial contacts with Illinois make Illinois its chosen second home." Plaintiff argues Washington University "has repeatedly taken steps to make itself at home in Illinois" by "continuously providing healthcare services throughout Illinois" and "specifically target[ing]" Illinois residents to attend the university. Plaintiff also contends WUPI's connections to Illinois are attributable to Washington University for jurisdictional purposes.

¶ 47      For a court to exercise general jurisdiction over a foreign corporation, that corporation's contacts in the foreign state must be more than "continuous and systematic"— those contacts must render the corporation "*essentially at home* in the forum State." (Emphasis in original and internal quotation marks omitted.) *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 16, 90 N.E.3d 440. A corporation is "essentially at home" in its place of incorporation and its principal place of business. *Aspen American Insurance Co.*, 2017 IL 121281, ¶ 17. In certain exceptional cases, such as when a corporation is forced to relocate temporarily due to extreme circumstances, the new location acts as a "surrogate for the place of incorporation or head office." (Internal quotation marks omitted.) *Aspen American Insurance Co.*, 2017 IL 121281, ¶ 17 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 130 n.8 (2014)); *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 447-48 (1952). Because Washington University is incorporated and has its principal place of business in Missouri, plaintiff must show the university's "contacts with Illinois are so substantial as to render this an exceptional case" to prevail in his argument the exercise of general jurisdiction over Washington University is appropriate. See *Aspen American Insurance Co.*, 2017 IL 121281, ¶ 18. Plaintiff fails to do so.

- 17 -

¶ 48 While Washington University does occasionally lease some of its physicians to Illinois healthcare facilities, this is not a sufficient basis for general jurisdiction. In *Campbell v. Acme Insulations, Inc.*, 2018 IL App (1st) 173051, ¶¶ 15-17, 105 N.E.3d 984, the reviewing court found no general jurisdiction, even though the foreign corporation's revenue stemming from its Illinois operations exceeded $1 billion. In so holding, the reviewing court emphasized "[t]he record before us reflects that approximately 2% of [the corporation's] income *** is generated in Illinois and only approximately 2.4% of its United States workforce is employed in Illinois." *Campbell*, 2018 IL App (1st) 173051, ¶ 15. Similarly, the record here establishes Washington University conducts approximately 98% or more of its business in Missouri, meaning the university conducts approximately 2%, or less, of its business in Illinois. Further, unlike the corporation in *Campbell*, Washington University does not operate any facilities in Illinois, and it does not bill patients or their insurers for the medical care provided by its physicians when they are leased to Illinois healthcare facilities.

¶ 49 Likewise, Washington University's recruitment of Illinois residents to become students also does not establish general jurisdiction. Plaintiff presents no authority supporting the conclusion that recruiting students from another state subjects an entity to general jurisdiction in that state. "[A]dvertising, or the mere solicitation of customers, is insufficient to establish general jurisdiction." *Bolger v. Nautica International, Inc.*, 369 Ill. App. 3d 947, 951-52, 861 N.E.2d 666, 670 (2007); see *Forrester v. Seven Seventeen HB St. Louis Redevelopment Corp.*, 336 Ill. App. 3d 572, 579-81, 784 N.E.2d 834, 838-40 (2002) (finding Illinois did not have general jurisdiction over a hotel located in Missouri despite the hotel's advertisement efforts to attract business from Illinois residents); *cf. Adams v. Harrah's Maryland Heights Corp.*, 338 Ill. App. 3d 745, 748-49, 789 N.E.2d 436, 440-41 (2003) (finding general jurisdiction existed where

approximately one-third of the defendant hotel's gold card holders were Illinois residents, defendant targeted its advertising efforts toward Illinois, and defendant advertised a free shuttle service from a city in Illinois). Washington University's recruitment of Illinois residents does not provide a basis for general jurisdiction in Illinois.

¶ 50    Finally, plaintiff insists Washington University's contacts with Illinois via WUPI are "extensive" but provides no support for the conclusion that WUPI's actions are attributable to Washington University for jurisdictional purposes. Indeed, plaintiff acknowledges Washington University and WUPI are separate corporate entities. "If the nonresident defendant is a parent corporation of a local subsidiary, Illinois courts cannot assert personal jurisdiction over the nonresident parent corporation simply because they have personal jurisdiction over the local subsidiary." *Morecambe Maritime, Inc. v. National Bank of Greece, S.A.,* 354 Ill. App. 3d 707, 711, 821 N.E.2d 780, 784 (2004). Rather, general jurisdiction is permissible "[i]f the subsidiary is effectively only doing business for the parent corporation." *Morecambe Maritime, Inc.*, 354 Ill. App. 3d at 711. Factors to consider include:

> "(1) [T]he control exercised by the parent over the subsidiary, (2) obligations of the subsidiary to service the parent's products, (3) inclusion of the subsidiary's name and address in the parent's advertising, (4) joint sponsorship of promotional activities, (5) interlocking directorships, (6) the sites of meeting[s] of the subsidiary's board of directors, and (7) whether the subsidiary is authorized to prosecute trademark infringement suits in the parent's name." *Wissmiller v. Lincoln Trail Motosports, Inc.*, 195 Ill. App. 3d 399, 403, 552 N.E.2d 295, 299 (1990).

¶ 51        Plaintiff presents no evidence showing WUPI is effectively only doing Washington University's business. See *Morecambe Maritime, Inc.*, 354 Ill. App. 3d at 711. Instead, plaintiff broadly alleges Washington University is "in direct control" of WUPI and uses WUPI to provide medical services in Illinois. Plaintiff also alleged WUPI accounts for a "significant portion" of Washington University's economic activity. These vague allegations fail to illuminate, *inter alia*, how much, if any, control Washington University exercises over WUPI, what WUPI's obligations are to Washington University, or whether Washington University includes WUPI's information in its advertising. See *Wissmiller*, 195 Ill. App. 3d at 403. Thus, plaintiff has not made the necessary showing to establish the circuit court could exercise general jurisdiction over Washington University because of WUPI's contacts with Illinois. See *Solomon*, 2023 IL App (5th) 210391, ¶ 37 ("A plaintiff has the burden to establish a *prima facie* basis for exercising personal jurisdiction over a nonresident defendant.").

¶ 52        For these reasons, the circuit court did not err when it found it lacked jurisdiction over defendants and granted their combined motions to dismiss counts III and IV.

¶ 53                          III. CONCLUSION

¶ 54        For the reasons stated, we affirm the circuit court's judgment.

¶ 55        Affirmed.

*Higgins v. Blessing Hospital*, 2024 IL App (4th) 231531

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Adams County, No. 22-LA-22; the Hon. Scott D. Larson, Judge, presiding. |
| **Attorneys for Appellant:** | Matthew L. Turner and John M. Malone, of Sommers Schwartz, P.C., of Southfield, Michigan, for appellant. |
| **Attorneys for Appellee:** | Timothy J. Gearin, Maureen O. Bryan, and Nicolas P. Cejas, of Armstrong Teasdale LLP, of St. Louis, Missouri, for appellees. |